ALBERT L. MURDOCK *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Suffolk.    March 12. — June 24, 1884.    DEVENS & COLBURN, JJ., absent.

If the ticket seller of a railroad corporation delivers to a passenger a ticket with
a hole punched in it, and assures him that the ticket entitles him to be carried
to his place of destination, when in fact, by the rules of the corporation, it does
not, and the passenger is expelled by the conductor from the train of cars, for
refusing to pay additional fare, he may maintain an action therefor against the
corporation.

TORT for being expelled from a train on the defendant's railroad at Pittsfield, and for false imprisonment in the lockup of that town.    Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff testified that he went to the ticket office of the defendant at Springfield in the evening of May 27, 1880, and asked the ticket seller for a ticket to North Adams, which is a station on the Pittsfield and North Adams Railroad, which road was run and managed by the defendant under a lease. The ticket seller, on being paid the fare to that station, handed to him a ticket from Springfield to Chester, and a ticket from Springfield to North Adams, which last ticket had been punched twice.    The plaintiff, seeing only the printed matter on the ticket from Springfield to Chester, repeated his request for a ticket from Springfield to North Adams.    The ticket seller then explained to him that he sold that ticket from Springfield to North Adams that morning to a man who came to the office in the afternoon and said that he had used the ticket only to Chester, and asked him to take it and repay the price of it less the fare to Chester, which he had done, and that the punches in it indicated that it had been so used, and that, with the ticket from Springfield to Chester, it would be good to the plaintiff for a passage from Springfield to North Adams.    Thereupon the plaintiff, saying that all he wanted was a good ticket to North Adams, took the two tickets, believing them to be good for that trip.    In a few moments, he took the train which left Springfield at twenty minutes before ten o'clock.    Soon after it started, he presented the tickets to the conductor of the train,

who accepted the ticket from Springfield to Chester as good for a passage to Chester, but told the plaintiff that the punched ticket was not good for a passage between Chester and Pittsfield, because the two punches showed that it had been used between Chester and Pittsfield, as well as between Springfield and Chester, and that he must pay the fare (seventy cents) from Chester to Pittsfield. The plaintiff told the conductor that he had paid the ticket seller at Springfield the fare from Springfield to North Adams, and had received the two tickets on the assurance of the ticket seller that they were good for a passage between those points, and declared that he would not pay any fare, and asked the conductor to telegraph to the ticket seller and ascertain the facts. The conductor refused to telegraph, and told the plaintiff that, if he would not pay the fare from Chester to Pittsfield, he must leave the train at Chester, because his ticket was not good between Chester and Pittsfield. After the train left Chester, the conductor demanded of him the fare, and the plaintiff refused to pay it, and, when the train reached Pittsfield, the conductor took hold of his collar, and, after he had alighted from the train, asked him to pay the fare, which he refused to do, whereupon the conductor gave him in charge of a police officer of Pittsfield as one refusing to pay fare, to be locked up, and the conductor then went on with his train towards Albany. The plaintiff went with the police officer to the lockup, and on the way was asked by the police officer to pay the fare and be released, which he refused to do. He was kept in the lockup until morning, when he was taken to the police court and was discharged by the judge, who told him that no complaint would be made against him. It was admitted by the plaintiff that he was confined in a proper and suitable place during the night, and was properly treated while there; and it was admitted by both parties that the conductor was one of the railroad police.

This was, in substance, the whole evidence introduced by the plaintiff, except what related to the amount of injury to health sustained by him by reason of the arrest, the charge made against him, and the imprisonment.

The ticket seller testified for the defendant, in substantial corroboration of the testimony of the plaintiff as to what took place at the time of the purchase of the tickets; that he sold the

tickets, supposing that the punched ticket had been used only to Chester, though he knew nothing about that except what the man from whom he redeemed it told him; that he now knew that the rules of the railroad required a ticket to be punched once between Springfield and Chester, and once between Chester and Pittsfield, but that he did not know of this rule when he sold the tickets. On cross-examination, he testified that he had been a ticket seller for the defendant twenty-seven years; that he had sold punched tickets before; that, in one instance, about three months before this affair, he had sold a ticket with two punches under precisely the same circumstances under which he sold the tickets to the plaintiff, and he heard nothing about it afterwards; and that he was discharged by the defendant from its service because of the selling of the punched ticket to the plaintiff.

The general superintendent of the defendant's road testified to the printed rule of the defendant relating to the punching of tickets on trains, which was in force when the acts complained of were done, and had been for ten years before, and was in the hands of conductors for their guidance. The rule, which was put in evidence, was in the following words:

" All tickets must be cancelled by the punch when first presented, and, if left in the hands of the passengers, must be punched as often as once in twenty-five miles, or as they pass over the following divisions, viz. between Boston and South Framingham, South Framingham and Worcester, Worcester and West Brookfield, West Brookfield and Springfield, Springfield and Chester, Chester and Pittsfield, Pittsfield and Chatham, Chatham and Albany. Tickets must not be cancelled for two divisions at the same time."

The superintendent further testified that a ticket from Springfield to North Adams punched twice showed that it had been used to Pittsfield, and was no longer good between Springfield and Pittsfield, or Chester and Pittsfield. He also testified that printed instructions to employees of the defendant acting as railroad police were given to all conductors of passenger trains on the defendant's road, the only one material to this case being as follows: " Section 7. No railroad corporation shall eject any person from its cars for non-payment of fare, excepting at some

passenger station upon its road. Officers of the railroad police may arrest any passenger refusing to pay his fare, and may deliver him into custody at any regular passenger station."

The conductor testified that the rule about cancelling tickets was given to him when he began work as a conductor, in October, before the affair with the plaintiff; that he had it in his pocket then, and that the rule had not been modified in any way; that he then knew of the instructions to railroad police testified to by the general superintendent; that he told the plaintiff that his ticket was not good between Chester and Pittsfield, because the punches showed that it had been used between those stations; that he borrowed of a passenger his ticket and showed it to the plaintiff, and explained to him that one punch indicated that the ticket had been used to Chester, and the two punches showed that it had been used to Pittsfield; that he had three conversations with the plaintiff about the matter, and told him, before he arrived at Chester, that he must leave the train at Chester, unless he paid the fare from Chester to Pittsfield; that, after leaving Chester, he demanded fare of the plaintiff, which was seventy cents, and offered to give him a receipt for it showing the circumstances under which it was paid, so that he could get it back, if it was found that his account of the purchase of the ticket was true; that when the plaintiff asked him to telegraph to the ticket seller he declined, saying that the ticket seller would not be at the office and that a telegram would not reach him that night; that his reason for saying this was that the telegraph operator had told him that there was no messenger at the office after his train left, and that no messages would be delivered at night, if sent from his train, unless they were addressed to the superintendent or some official, and related to an accident; that he did not touch the plaintiff, and, after the plaintiff had alighted from the train, he again asked him to pay the fare; that the plaintiff refused, and he gave the plaintiff into custody, as the plaintiff testified; that he went on to Albany with his train, leaving Pittsfield a little before midnight, and reached Pittsfield on the return train at about four o'clock the next morning, where he left the train to proceed east, while he stopped at Pittsfield; that he took such steps that, at about half-past eight o'clock in the morning, he received a telegram from

the ticket seller, saying that the tickets were sold under the circumstances stated by the plaintiff, and asked him that the plaintiff be released from custody; and that he, being obliged to take a train for Springfield then about to start, asked the defendant's station agent to attend to the matter.

A. W. Kellogg testified that, at the request of the station agent, he went to the police court and informed the judge in open court that the plaintiff had been arrested for not paying fare on the defendant's road; that it had that morning been discovered that there had been a mistake about the ticket given to the plaintiff, and that there would be no complaint; that thereupon the judge informed the plaintiff that there would be no complaint against him, and he was discharged; that the plaintiff said he wished for a complaint; and that the judge told him there would be none.

The foregoing was, in substance, all the evidence in the case, except what related to an apology by the ticket seller to the plaintiff, and endeavors on his part and on the part of the defendant to make a settlement with him, and what related to injury to the plaintiff's health, as above stated.

At the close of the evidence, the defendant asked the judge to rule as follows: "1. On the whole evidence, the verdict must be for the defendant. 2. On the undisputed evidence, the ticket sold to the plaintiff was not by the rules and practice of the defendant good for a passage between Chester and Pittsfield. 3. The conductor had the duty, under the rules of the defendant, to demand and collect fare of the plaintiff for the passage from Chester to Pittsfield, and the right, on his refusal to pay that fare, to eject him from the train. 4. The conductor had the right to turn the plaintiff, when off the train at Pittsfield, over to the police at that station for custody. 5. Inasmuch as the ticket which the plaintiff offered to the conductor was not good for a passage from Chester to Pittsfield, it was the duty of the plaintiff, on demand of the conductor, to pay the fare from Chester to Pittsfield, and, on his refusal to do so, he had no right to remain on the train, and was liable to be expelled from it at a station. 6. It was no part of the duty of the conductor to take the word of the plaintiff as to what he paid for the ticket which he offered, or as to what ticket he asked for, or as to what took

place between him and the ticket seller; and the conductor was entitled to expel the plaintiff from the train at Pittsfield, unless he paid the fare from Chester to Pittsfield, the ticket not being good for that passage. 7. And the conductor had the further right to turn the plaintiff over to the police for custody until morning. 8. The manner of the discharge of the plaintiff by the judge of the court at Pittsfield, without a sworn complaint having been made, did not affect the rights of the defendant, nor make the arrest or imprisonment of the plaintiff illegal."

The judge refused to give the rulings asked for, except the second and eighth, modified as hereinafter stated; and instructed the jury that, whether the ticket was good or not beyond Chester, if the jury found that the plaintiff exercised that care which a prudent and reasonable person would exercise in the procuring of his ticket, and the paying of his fare from Springfield to North Adams, and was furnished by an agent of the corporation with this ticket, and, in the exercise of due and reasonable care, such as a prudent person would take, took it, he was entitled to go upon that train, and to ride all the way from Springfield to North Adams without any interruption on the part of any officer of the corporation ; that it was an offence against the law for a man fraudulently to attempt to evade his fare; that the jury ought not to give him any damages for any injury which the plaintiff received from the police officers in Pittsfield, where they went beyond their line of duty in the matter of holding him for trial the next day in court; that the manner of the discharge of the plaintiff by the judge of the court at Pittsfield, without a sworn complaint having been made, did not affect the rights of the defendant, nor make the arrest or imprisonment of the plaintiff illegal.

The jury returned a verdict for the plaintiff in the sum of $4500; and the defendant alleged exceptions.

*A. L. Soule*, for the defendant.

*R. M. Morse, Jr. & H. L. Harding*, for the plaintiff.

C. ALLEN, J. It appears that the defendant's agent and ticket seller told the plaintiff that the two tickets would be good for a passage from Springfield to North Adams, and explained the meaning of the punched holes, and, with a full understanding of exactly what the tickets were and of what the plaintiff

wanted, sold them to him as tickets good for his contemplated trip. There was nothing on their face to show the contrary to the plaintiff, and he took and paid for them on the strength of these explanations and assurances of the ticket seller. There was no mistake on the part of either as to where the plaintiff wished to go, or what terms were actually expressed upon the tickets, or what marks or punched holes they bore. The circumstances of there being two tickets, and of the holes in one of them, naturally induced inquiry by the plaintiff, and he had no reason to distrust the correctness of the explanations which were given to him. The ticket seller assumed to know, and gave assurances which the plaintiff had a right to rely on, and which he did rely on. If, when the conductor refused to accept the punched ticket, it had appeared on an inspection of it that there had been a mistake, and that it did not on its face purport to be good for a passage over that part of the defendant's road, and that the ticket seller had delivered to the plaintiff a good ticket upon some other railroad, or to some place which had already been passed, when the mistake was discovered, and it was found that the plaintiff had through inadvertence accepted a ticket which on its face was plainly insufficient, then this case would have fallen within the doctrine of the recent decision in *Bradshaw* v. *South Boston Railroad*, 135 Mass. 407, and it would have been the duty of the plaintiff to yield for the time being, and pay his fare anew, or withdraw from the car, unless a distinction should be taken between the rights of passengers upon steam railways and street railways, under such circumstances, — a question which we do not now consider. See *Cheney* v. *Boston & Maine Railroad*, 11 Met. 121; *Yorton* v. *Milwaukee, Lake Shore & Western Railway*, 54 Wis. 234; *Townsend* v. *New York Central & Hudson River Railroad*, 56 N. Y. 295; *Petrie* v. *Pennsylvania Railroad*, 13 Vroom, 449; *Dietrich* v. *Pennsylvania Railroad*, 71 Penn. St. 432; *Frederick* v. *Marquette, Houghton & Ontonagon Railroad*, 37 Mich. 342. *McClure* v. *Philadelphia, Wilmington & Baltimore Railroad*, 34 Md. 532.

But, in the present case, such is not the position of the parties. As has been seen, the plaintiff not only was not guilty of any negligence in accepting his ticket, but he examined it

carefully, saw everything there was on it, and received explana-
tions of the meaning of the punched holes, and assurances that
the two tickets, in the condition in which they were, would be
good for the trip. In such a case, there being no mistake or in-
advertence on his part in the respects mentioned, and the tickets
which were delivered being in all particulars such as were in-
tended to be delivered, and there being nothing which could be
gathered by inspection to show that they were insufficient, and
no notice of their insufficiency being given to the plaintiff by
anybody, or in any form, until he had already entered upon and
partially accomplished his journey over the defendant's road, he
might well insist upon being allowed to complete that journey.
If the defendant's superintendent or president, or both of them,
had been standing by when the plaintiff purchased his tickets,
and had heard and assented to what was said by the ticket seller,
and if they also were under the same mistake as to the rules
established for the guidance of conductors, the legal position of
the plaintiff would hardly have been stronger than it is at pres-
ent. It would still be the case that he took his tickets relying
on the mistaken assurances of the defendant's agent in respect
to their validity. If the defendant, through any imperfection in
its rules or methods, or any ignorance or violation of rules or
instructions by its agents, has been led into any interference
with the rights of the plaintiff under such circumstances, it must
abide the consequences. To hold the contrary would be a burden
upon passengers such as is called for by no reason of necessity
or expediency.

On the other hand, it is no more than a wholesome require-
ment that railway companies should be responsible in damages
for the consequences of a mishap such as occurred in the pres-
ent case. The conductor's explanation of the meaning of the
two punched holes might or might not be correct; at any rate,
their meaning was purely arbitrary, and, so far as the plaintiff
could see, the conductor's interpretation was no more probable
or intelligible than that given by the ticket seller. The plain-
tiff had a right to act upon the explanations given to him at
the time when he bought his ticket. The mistake was that
of the ticket seller, in supposing that the punched holes signi-
fied that the ticket had been used only to Chester, whereas in

fact, according to the defendant's rules for the instruction and guidance of conductors, they signified that it had been used to Pittsfield, a station farther on. The offer of the conductor to give a receipt to the plaintiff for the additional fare which he demanded, stating the circumstances under which it was paid, so that the plaintiff might get back the money, if it should be found that his account of the purchase of the ticket was true, though showing good faith on the part of the conductor, did not have the effect to make it the legal duty of the plaintiff to pay the additional fare.

It follows that all the instructions requested were properly refused, except as modified by the presiding judge; and the instructions which were given were clearly and accurately expressed. *Maroney* v. *Old Colony & Newport Railway*, 106 Mass. 153. *Exceptions overruled.*