## JOHNSON *v.* NORTHERN PAC. RY. CO.

*(Circuit Court, D. Washington, E. D.* April 15, 1891.)

**1. CARRIERS OF PASSENGERS—EJECTION FROM CARS.**
Plaintiff purchased a ticket for an extended journey, the latter part of which was over defendant's road. By mistake the agent punched the ticket so as to indicate that it expired on the day on which it was issued. The mistake was not discovered until she was on the first division of defendant's road, when the conductor, upon telegraphing to the head office, received orders to honor the ticket until further instructions. At the end of his division, when he left the train, he delivered her the telegram. The conductor of the next division, notwithstanding the telegram, and the evidence on the face of the ticket that it had been honored, telegraphed to the division superintendent, and received no answer, and meanwhile, from time to time, for several hours, worried plaintiff by making remarks calculated to disturb her, and make her realize the disadvantages of her situation, and showing a desire to be unduly familiar. Finally, about midnight, after she had been carried a great distance, he put her off the train. She had explained in her first conversation that she was far from home, her means were exhausted, and she was not able to pay her fare. *Held,* that plaintiff was entitled to recover damages for the expulsion and ill treatment, in an action on the contract represented by the ticket.

**2. SAME—VERDICT—MEASURE OF DAMAGES.**
A verdict for $1,000 having been set aside, and a new trial granted, a second verdict for $500 was rendered. That, too, was set aside, and on the third trial another verdict for $1,000 was rendered. *Held,* that the limits of the court's discretion had been reached, and the verdict would not be disturbed as excessive.

**3. SAME—MISCONDUCT OF JURY.**
Where it appears that the jury arrived at a verdict by each juror writing the amount which he was willing to give, adding the several amounts together, and dividing the total by 12, the verdict will not be aside for that reason, where it further appears that no agreement was made to abide the result, and where the amount agreed upon is much less than the quotient so obtained.

At Law. On motion for new trial.
*L. H. Prather* and *R. J. Danson*, for plaintiff.
*J. H. Mitchell, Jr.*, for defendant.

HANFORD, J. The first trial of this case was had in the territorial district court, resulting in a verdict in favor of the plaintiff for $1,000, which was set aside, and a new trial granted, on motion of the defendant. Upon a second trial the jury returned a verdict for $500. That verdict was also set aside by the court. The third trial of the case was had in this court, and resulted in a verdict in favor of the plaintiff for $1,000, and the defendant for the third time asks for a new trial. Three principal grounds are urged in the argument. The first is that the plaintiff is not entitled to recover damages in this action. The decision of that question necessitates consideration of the pleadings and the evidence, and a review of the whole case.

The action, as I construe the pleadings, is based upon a contract to recover damages resulting from personal injuries caused by a tortious breach of the contract, and it is therefore to be distinguished from numerous decisions holding that where in his complaint the plaintiff pleads only a wrongful and forcible expulsion from a passenger train, and the defendant justifies by showing the failure of the plaintiff to present, when called upon, a proper ticket, pay fare, or leave the train. In such an action the complaint is for a tort, pure and simple, and, as it is the

duty of a passenger to present a ticket, pay fare, or leave the train, when called upon, his failure to do either is wrongful, and no tort is committed by the officers of the train in using reasonable and sufficient force to eject him. The complaint and the evidence shows that the plaintiff applied to an agent of defendant for a ticket entitling her to transportation to a specified point, to which she wished to make a journey. The agent could not furnish exactly such a ticket as she asked for, but he then made a proposition to sell her a second-class limited ticket to a place near the point to which she wished to go, which proposition the plaintiff accepted. She paid the stipulated price, and received a ticket, which she supposed to be good for the intended journey. The transaction took place at a railroad station, and was concluded hurriedly, during a short interval between the opening of the ticket-office and the departure of the train upon which the plaintiff commenced her journey. If the plaintiff had taken the pains to carefully examine her ticket before accepting and paying for it, she probably would not have been able to have discovered the error committed by the agent in punching it, which in part caused the trouble eventuating in this lawsuit; but she relied upon the agent to perform his duty in issuing to her a proper ticket, conformable to his instructions and the requirements of the railroad company. I hold that in issuing that ticket the company contracted to furnish her transportation and protection from abuse and insult while on her journey, and also warranted that the ticket issued was good for the trip. It was a coupon ticket, and the coupons were accepted by the conductors of the connecting road over which the plaintiff made the first part of her journey. At St. Paul she was admitted to the train of the defendant after exhibiting her ticket to the gate-keeper at the depot, and she had been carried a portion of the way on the defendant's road before discovery of the mistake made by the agent who sold her the ticket in punching it so as to make it indicate that the time limited within which it should be good had expired, the date of expiration as punched being the very day on which it was issued; but, as the date of its issue was not stamped or written, the mistake was not apparent from the ticket itself. Upon discovery of the mistake, the conductor of the train, instead of requiring the plaintiff to pay fare or leave the train at once, made inquiry by telegraphing to the defendant's head office at St. Paul, and in response to his inquiry received a telegraphic order to honor the ticket until further instructions, and no other or different instructions or notice was afterwards sent from that office. The plaintiff was permitted to continue on her journey to the end of the division at which this conductor left the train, and on leaving he delivered to her the telegram which he had received from St. Paul. The conductor of the next division, when the ticket was presented to him, received with it the telegram from the head office, but instead of obeying it, or applying for further instructions, or requiring her to pay fare or leave the train at once, he telegraphed for instructions to the division superintendent, but received no response. Then, as the testimony on the part of the plaintiff tends to prove, he commenced worrying the plaintiff, and making

remarks to her which, if not intended to be insulting, were certainly suggestive of a desire on his part to disturb her, by making her realize the disadvantage of her situation, and to be unduly familiar. He continued, with frequent repetitions, during several hours, to thus torment the plaintiff, and she was meanwhile carried a great many miles on the train. Finally, at about midnight, the conductor, with the assistance of a police officer found at Missoula station, removed the plaintiff from the train. A fellow-passenger then purchased a ticket for her, and she was permitted to re-enter the car, and continue her journey. The plaintiff explained in her first conversation with this conductor that she was unable to pay her fare, as she was far from home, and from her destination, and her means were exhausted. The ticket itself bore evidence that it had been honored by other conductors, and that fact, in connection with the telegram from head-quarters, was sufficient evidence of the validity of the ticket, and, under the rules of the company, it was the conductor's duty to have accepted it. By forcibly expelling the plaintiff from the train, and its failure to protect her from ill-treatment, the defendant's contract was broken, and the plaintiff suffered an injury, thereby entitling her to recover damages in an action on the contract.

The next question is as to the measure of damages. The testimony in the case which went to the jury had a tendency to prove that the plaintiff was damaged, not only by reason of mental and physical suffering at the time, but for months afterwards, by reason of nervousness brought on by the ordeal through which she passed, her health was impaired, and she was partially incapacitated for doing her usual work. There is then in the testimony, as well as in the allegations of the complaint, a showing of peculiar injuries to the plaintiff, giving her a claim to special damages by reason of the tortious manner in which the contract was broken. The court instructed the jury, in effect, that if, according to the decision of the jury, the plaintiff should be entitled to recover, the measure of damages would be reasonable compensation for the injury actually sustained by the plaintiff, and that exemplary damages could not be awarded. There is no ground for supposing that the jury were actuated by passion or prejudice, or that they intended to disregard this instruction. Even if my opinion of the case would warrant me in regarding the sum awarded by the verdict as excessive, still, being the result of the third trial, and being the sum twice fixed upon by successive juries, I think the limit of the court's discretionary power in granting new trials for this particular cause has been reached.

The third and last ground for the motion is alleged misconduct of the jury, in this: that the verdict was arrived at by each juror writing the amount which he was willing to fix as the amount of damages recoverable, and adding the several amounts so given, and dividing the total by 12. From affidavits on file I find the facts to be that, for the purpose of coming to an agreement, if possible, the jury did resort to the above method of addition and division of numbers, but the verdict was not arrived at in that way. There was no agreement made to abide the result. The amount of the damages awarded is much less than the

quotient obtained by the process above mentioned, and the verdict was freely assented to by all of the jurors. While one or more of them may have been thereby influenced to consent to a verdict for a larger sum than he otherwise would have fixed as the proper amount of damages, they were not coerced nor deceived. Each juror was free to give or withhold his consent, and was conscious of it, and they actually balloted more than once after the proceeding referred to, and before an agreement was arrived at. It is not practicable for the court to control a jury during their deliberations to the extent of prescribing or proscribing any particular arguments or methods of persuasion that may or may not be used by them to influence each other; and it is not wrong for the members of the jury to influence each other by any effective method free from fraud and intimidation. For these reasons I do not regard the jury as being guilty of misconduct for which their verdict should be set aside.

The motion for a new trial will therefore be denied.