### NORTHERN PAC. PAC. R. CO. v. PAUSON.

(Circuit Court of Appeals, Ninth Circuit. October 31, 1895.)

#### No. 224.

CARRIERS—EXPULSION OF PASSENGER—OMISSION OF AGENT TO STAMP TICKET.
Plaintiff purchased from the defendant railway company a round-trip ticket from P. to S. and return, one of the conditions of which, printed on its face, was that the return coupon would not be honored for passage unless the passenger was identified by the agent at S., before returning, and the coupon signed by him, and witnessed and stamped by such agent. Plaintiff, when about to return from S., presented his ticket to the agent there, signed it for the purpose of identification, and handed it to the agent, at the same time asking for a sleeping-car ticket. The agent took the ticket to the rear of his office, and, returning with it, handed it to plaintiff, folded up with the sleeping-car ticket. Plaintiff put the ticket, so folded, in his pocket, and did not discover, until he was on the train on the way to P., that the agent had omitted to stamp the ticket, for which cause plaintiff was ejected from the train by the conductor upon his refusal to pay fare. *Held*, that the plaintiff, having done all that he was required to do, and being justified by the circumstances in believing that the agent had duly stamped the ticket, was a legal passenger upon the train, and the railway company was liable in damages for his expulsion.

In Error to the Circuit Court of the United States for the Northern District of California.

This is an action to recover damages for the alleged wrongful expulsion of the defendant in error from a passenger car of the plaintiff in error. It was commenced in the superior court of the city and county of San Francisco, and, upon motion of the plaintiff in error, was removed to the United States circuit court. The complaint alleges that on the 6th day of September, 1892, the plaintiff (defendant in error) became and was a passenger upon a train of cars operated upon the railroad of defendant (plaintiff in error), running from Seattle, Wash., to Portland, Or., for the purpose of being transported

from Seattle to Portland, and had paid to the defendant the fare for such transportation; that while he was a passenger upon said train the defendant wrongfully, maliciously, wantonly, and willfully assaulted, insulted, and maltreated the plaintiff, and by force and arms ejected him from the said train; that by reason of said acts the plaintiff suffered both physical and mental injuries,—and prayed for damages in the sum of $10,000. The answer denies these allegations of the complaint. The case was tried before a jury, and a verdict was rendered in favor of the plaintiff for the sum of $310.

Upon the trial, the plaintiff, to sustain the issues upon his part, introduced evidence to the effect that he was a merchant engaged in business at San Francisco, Cal., and at Seattle, Wash.; that he had purchased of the defendant a round-trip ticket from Portland to Seattle and return, which, among other things, required that the holder must be identified as the original purchaser of the ticket by writing his or her signature on the back thereof, or by other means, if necessary, in the presence of the ticket agent of the Northern Pacific Railroad at Seattle, Wash., who will witness the same, otherwise it will not be honored for passage; that he had made the trip from Portland to Seattle on this ticket; that on the 6th day of September he sent a messenger to the ticket office of defendant at Seattle to reserve a sleeper; that about 10 o'clock on the evening of said day he went to the ticket office, and asked the agent if he had a sleeper; that the agent replied, "What is your name?" and then asked him for his ticket; that he handed over the ticket in question; that the agent took it, and laid it on the board, and gave him a pen, and said to him, "Please sign that"; that he signed it, and handed it to the agent; that the agent took it to the rear end of the ticket office, and came back with a ticket berth for the sleeper; that the agent folded both tickets together, and handed them over to the plaintiff, who thereupon paid to the agent the sum of two dollars for the sleeper ticket; that plaintiff then put the folded tickets in his pocket, got on the train, and, after getting a check for his sleeper berth, went to bed. As to what occurred on the train the plaintiff testified as follows: "I was asleep when the conductor came around, and he asked for my ticket. I had put my ticket under a pillow, in order not to be annoyed, so I could get it when asleep,—under my pillow, in order to have it handy when the conductor comes. So I handed him the ticket, and he looked at it, and he told me that I could not ride on that ticket. I was surprised, and thought may be I gave him the wrong ticket or something, and I asked him what the trouble was with it, and he said, 'That ticket won't go,' and I explained the matter to him. I looked at the ticket,—examined the ticket,—and seen where there was a place where it says, 'Station agent stamp here,' and I seen there was no stamp on it. I explained the matter to him, and I says, 'I have done my part.' I presented the ticket in the presence of two of our men from the store, and I described to him what I had done in regard to it, and that the ticket was all right; that I got the ticket, and paid for it, and signed it in his presence,—all that was required of me to do; and he says, 'That don't make any difference. I know my business, and the ticket ain't no good, and you cannot ride on it.' I told him I had positively paid for the ticket, and it was my own until I had used it up, and 'I am going to ride on it.' He says, 'You cannot; and I know my business; and you cannot ride on this ticket.' And we talked the matter over for some time, and I hated to get out of bed, and told him so. And he says: 'You have either got to pay your fare or get off.' I told him: 'You mean, according to that, I have got to get out of bed and dress myself?' He says, 'That is what you have got to do,' and I got up and dressed myself, and before I got through dressing the train stopped, and the conductor came to me, and I was not quite done yet, and he waited until I got through, and he says, 'Now get off the train.' I told him: 'No, I would not. I wanted to ride on the train, and I had paid my fare, and I did not want to get off.' He says, 'All right; I will put you off.' I says, 'All right; you will have to put me off. I won't go until I am put off.' He says, 'Have you any baggage,' and I says, 'Yes,' and I pulled a satchel from under the bed, and I am not positive, but I think the porter took my satchel, and he led me out of the train onto the platform. When I was on the platform, it looked really—I could not see any light—only a small station there, and asked him if he knew where I could find a hotel

or place to stop over night, and he says he don't know; he don't care a damn. I looked around there, and did not like to lay out all night, and did not see any place where I could go to. I told him, 'I think I had better pay my fare and go on,' and I went on the train, and paid my fare, and went on. * * * I was excited, and felt bad on being put off of the train. Never had anything of that kind happen to me before, and I travel a great deal. I felt naturally insulted and degraded, and consider I was treated just like a tramp in being put off the train. I talked to the conductor in reference to the affair, and told him who I was, and told him I was certainly put off the train wrongfully; explained the matter to him; told him how the whole thing happened; told him the same thing over again before he put me off; and the conductor told me he was satisfied in his mind that I was the right man, that it was my ticket, and that I was the right party; and I told him that I belonged to the firm in Seattle, and he told me that he had his instructions, and he had to do according to his instructions." There was a conflict in the evidence as to what occurred at the ticket office between the agent and the plaintiff. The defendant, at the close of the case, moved the court to instruct the jury to find a verdict for defendant, which motion was denied. The court, after stating the conditions on the ticket, and the notice given to the passenger "that it will not be good unless so signed, witnessed, and stamped," and that this notice was substantially a part of the terms of the ticket, charged the jury as follows: "Therefore it was the duty of the plaintiff to present the ticket to an agent for signing and witnessing and stamping. When so presented and signed, it was the duty of the agent to witness and stamp it. There is a controversy between the plaintiff and defendant as to what was done, which you are to decide from the testimony; and if you find from the testimony and evidence that the plaintiff did present himself to an agent, and sign the ticket in his (the agent's) presence, and the agent took the ticket, and returned it in such a way and under such circumstances as to justify plaintiff in believing that he, the agent, had witnessed and stamped the ticket, and plaintiff, so believing, entered the train, he was a legal passenger; and if you find from the evidence, further, that he explained to the conductor the circumstances, he had a right to refuse to pay or deposit a fare with the conductor; and his removal from the train, if you find from the evidence he was removed, was unlawful."

Joseph D. Redding, for plaintiff in error.

George Lezinsky, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). The disposition to be made of this case depends upon the question whether the charge of the court to the jury states a correct legal principle applicable to the facts and circumstances of this case. The authorities bearing upon this question are by no means uniform, some of the courts holding that it is the duty of the passenger, before going upon the train, to examine his ticket, and to ascertain therefrom whether or not any mistake has been made by the ticket agent; that the face of the ticket is conclusive evidence to the conductor of the train as to the contract between the passenger and the railroad company; that the conductor can look only to the ticket, and has no right to be governed by any statement or explanation of the passenger; that if the ticket is not upon its face such a ticket as entitles the passenger to ride, the conductor has the right, and it is his duty, to eject him from the train; and that his only remedy for the mistake, negligence, or carelessness of the ticket agent is by an action for breach of the contract to recover the extra amount

he was compelled to pay for his fare, and he cannot recover for the tort of the conductor in expelling him,—others holding that the passenger has the right to rely upon the acts and statements of the ticket agents or conductors, and that, if expelled from the train when he has acted in good faith and is without fault, the carrier would be liable in damages for such expulsion, whether the action is brought for a breach of the contract or solely for the tort of the conductor. With this conflict in the decisions, state and national, we must examine the reasons given by the courts for the adoption of the rule upon which their decisions are founded, and endeavor to ascertain the controlling principles of the law applicable to this case which are best established by the soundest reason and justice of the cases. In the view we take of the question of pleadings it is wholly immaterial whether the action is to be treated as founded upon a tort, pure and simple, as claimed by the plaintiff in error, or as an action upon a contract to recover damages resulting from a tortious breach of the contract. Under the system of practice prevailing in many of the states there ought not to be any special controversy as to the character of this action, as the formal distinctions which prevailed at common law are abolished. The action was instituted in California, and, being an action at law, is controlled by the provisions of the Code and decisions of the state court. In Gorman v. Southern Pac. Co., 97 Cal. 6, 31 Pac. 1112, the court expressly held that, "when a passenger is wrongfully expelled from a train, it is a breach of duty on the part of the carrier, and an action in tort will lie to recover damages." McGinnis v. Railway Co., 21 Mo. App. 407; Railroad Co. v. Roberts, 91 Ga. 513, 519, 18 S. E. 315; Hall v. Railroad Co., 15 Fed. 59. In all such actions the plaintiff is not to be confined in his recovery to the price of his extra tickets or fare or mere loss of time, but the jury may award damages for the humiliation or injury received by his wrongful expulsion from the train. Zion v. Southern Pac. Co., 67 Fed. 503, and authorities there cited. With reference to the principles enunciated in the charge of the court it is deemed proper to refer generally to many cases which discuss the relative rights and duties of a railroad company and of its passengers. It has been held that it is a reasonable regulation upon the part of the company to require passengers getting upon its railroad train without a ticket to pay ac ditional fare, but in this connection the courts declare that a reasonable opportunity must be given to the passenger to enable him to purchase the ticket, and that, if the passenger fails to purchase a ticket solely on account of the premature closing of the ticket office, or of the failure of the railroad company to have an office for the sale of tickets, he cannot be required to pay additional fare, and, if expelled for the nonpayment of the additional fare, after paying or offering to pay the regular fare, he is entitled to recover damages for the expulsion. Poole v. Railroad Co., 16 Or. 261, 19 Pac. 107; State v. Hungerford, 39 Minn. 7, 38 N. W. 628; Everett v. Railway Co., 69 Iowa, 15, 28 N. W. 410. The reason given is that, to allow a railroad company to enforce its rule for

additional fare, under such circumstances, would be punishing the passenger for the railroad company's neglect of duty. Unless the railroad company furnishes the necessary conveniences or facilities for procuring tickets, the passenger cannot be considered to be in any manner at fault. Ray, Neg. Imp. Dut. 181–183, and authorities there cited.

With reference to the right of a passenger to be carried on the wrong coupon, where the coupons are detached by the conductor on the going trip, and the returning coupon, instead of the going coupon, is retained by the conductor, and the going coupon, instead of the returning coupon, given to the passenger, which the passenger retains without discovering the mistake until he presents it to the conductor on the return trip, and then makes his explanation as to how the mistake occurred, the courts have held that under such circumstances the passenger has the lawful right to be carried on his return trip on presenting the going coupon, with the explanation; and, if expelled for not paying his fare, he is entitled to recover damages for the expulsion. Pennsylvania Co. v. Bray, 125 Ind. 229, 25 N. E. 439; Railway Co. v. Fix, 88 Ind. 381; Railroad Co. v. Bambrey (Pa. Sup.) 16 Atl. 67; Wightman v. Railway Co. (Wis.) 40 N. W. 689; Railroad Co. v. Rice, 64 Md. 63, 21 Atl. 97; Rouser v. Railway Co., 97 Mich. 565, 56 N. W. 937. These cases, as well as the others previously referred to, all proceed upon the broad ground that the passenger was wholly without fault; that he had done all that could reasonably be required of him to do; and that the railroad company, by the mistake, carelessness, or negligence of its agents or conductors, was itself at fault. This is the underlying principle of all the well-considered cases upon this subject. This principle is fair to both parties. It is sound, reasonable, and just. In further support of it we cite the following additional authorities: Johnson v. Railway Co., 46 Fed. 347; Zion v. Southern Pac. Co., 67 Fed. 506; Head v. Railway Co. (Ga.) 7 S. E. 217; Railroad Co. v. Dougherty, 86 Ga. 744, 12 S. E. 747; Railroad Co. v. Roberts, 91 Ga. 514, 18 S. E. 315; Railway Co. v. Hennigh, 39 Ind. 509; Hufford v. Railroad Co., 64 Mich. 631, 31 N. W. 544; Railway Co. v. Mackie (Tex. Sup.) 9 S. W. 451; Railroad Co. v. Conley (Ind. App.) 32 N. E. 96; Murdock v. Railroad Co., 137 Mass. 293; Muckle v. Railway Co., 79 Hun, 38, 29 N. Y. Supp. 732; McGinnis v. Railway Co., 21 Mo. App. 399; Burnham v. Railway Co., 63 Me. 298.

In a majority of the cases cited by the plaintiff in error in support of its contention, it affirmatively appears that the passenger was himself at fault, and that the railroad company was free from any fault, negligence, carelessness, or mistake. Especially is this true in the following cases: Railway Co. v. Bennett, 1 C. C. A. 544, 50 Fed. 496; Dietrich v. Railroad Co., 71 Pa. St. 433; Railway Co. v. Griffin, 68 Ill. 499; Pennington v. Railroad Co., 62 Md. 95; Johnson v. Railroad Co., 63 Md. 106; Petrie v. Railroad Co., 42 N. J. Law, 449. In Mosher v. Railroad Co., 127 U. S. 390, 8 Sup. Ct. 1324, upon which plaintiff in error principally relies, neither party seems to

have been at fault. In that case there was a .special contract in regard to a tourist's ticket sold by the St. Louis, Railroad Company to Mosher at St. Louis, Mo., "good for one first-class passage to Hot Springs, Ark., and return, when officially stamped on back hereof, and presented with coupons attached." The St. Louis Railroad extended to Malvern, and a coupon on the ticket entitled Mosher to be carried from Malvern to Hot Springs, and back on the Hot Springs Railroad. The regulations upon the ticket provided that it was not good for return passage "unless the holder identifies himself as the original purchaser to the satisfaction of the authorized agent of the Hot Springs Railroad at Hot Springs, Ark." When Mosher returned, he went to the ticket office of the Hot Springs Railroad, at Hot Springs, for the purpose of having himself identified in pursuance of the terms of the ticket, but failed to obtain such identification on account of the failure of the Hot Springs Railroad to have an agent at that place. He returned over the Hot Springs road to Malvern, and when he got upon the train of the St. Louis road the conductor called for his ticket, and refused to honor it, because its conditions had not been complied with. Another condition upon this ticket was "that in selling this ticket the St. Louis, Iron Mountain and Southern Railway Company acts only as agent, and is not responsible beyond its own line." Upon these facts the court held that Mosher had no cause of action against the St. Louis Company for his expulsion. In the course of the opinion the court said:

"By the first condition of the contract contained in the plaintiff's ticket the defendant is not responsible beyond its own line. Consequently, it was not responsible to the plaintiff for failing to have an agent at the further end of the Hot Springs Railroad. The agent who was to identify the passenger and stamp his ticket there was the agent of the Hot Springs Railroad Company, and is so described in the ticket, as well as in the petition. If there was any duty to have an agent at Hot Springs, it was the duty of that company, and not of the defendant. * * * The omission to have an agent at Hot Springs not being a breach of contract or of duty on the part of this defendant, the case is relieved of all difficulty."

This was the reason, and the sole reason, given for the decision. It will therefore readily be seen that the decision in that case does not support the views contended for by the plaintiff in error.

In Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 73, 12 Sup. Ct. 356, there is a clear recognition of the fundamental principles which we have announced. The court, in the course of the opinion, said:

"The reason of such rule is to be found in the principle that, where a party does all that he is required to do under the terms of a contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract."

In the present case Pauson introduced testimony tending to show, and from which the jury were authorized to infer, that he had fully complied with all the conditions of the ticket upon his part; that he "did present himself to an agent, and sign the ticket in his [the agent's] presence, and the agent took the ticket; and returned it in such a way and under such circumstances as to justify plaintiff in

believing that he, the agent, had witnessed and stamped the ticket, and plaintiff, so believing, entered the train." The court did not err in instructing the jury that, if they believed such facts to be true, then the plaintiff was a legal passenger, and his removal from the train was unlawful. The judgment of the circuit court is affirmed.