### SCOFIELD v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. January 13, 1902.)

No. 961.

1. CARRIERS—RIGHT TO STOP OFF—CONTRACT—TICKET AS EVIDENCE — TAKING UP TICKET.

Where a railroad company agrees to transport a passenger between specified points, with the right to stop off at an intermediate point, and the ticket coupon covering the distance between such points is taken up by the company's conductor before reaching the intermediate point,

over the passenger's objection, the fact that the passenger was thus left without written evidence of his right to resume his journey from the place of stop-over, gives the conductor of a later train no authority to eject the passenger, since such right can be founded on a parol agreement.

**2. SAME—EXPULSION OF PASSENGER—RIGHT OF ACTION.**

Where a railroad company agrees to transport a passenger between specified points, with the right to stop off at an intermediate point, and the ticket coupon covering the distance between such points is taken up by the company's conductor, over the passenger's objection, before reaching the intermediate point,—the right to stop off being denied,— the passenger's right of action against the company for breach of contract is not thereby consummated, so as to deprive him of a right of action for expulsion from a succeeding train on resuming his journey from the place of stop-over; such expulsion being directed by the company's agent after investigation.

**3. SAME—RIGHT TO RESUME JOURNEY WITHOUT TICKET.**

Where a railroad company agrees to transport a passenger between specified points, with the right to stop off at an intermediate point, and there is nothing on the face of the ticket inconsistent with such privilege, nor any rule of the company shown contrary thereto, nor knowledge thereof by the passenger, and the company's conductor, denying the right to stop off, takes up the passenger's coupon over his objection, such passenger has a right under his contract to resume his journey from the place of stop-over, though the written evidence of such contract is in the hands of the company, and though the conductor has denied his right to stop off.

**4. SAME—CONTRIBUTORY NEGLIGENCE.**

Where a railroad company agrees to transport a passenger between specified points, with the right to stop off at an intermediate point, and the ticket coupon covering the distance between such points is taken up by the company's conductor, over the passenger's objection, before reaching the intermediate point, and the right to stop off denied, the passenger on resuming his journey from the point of stop-over is not guilty of contributory negligence, as a matter of law, in attempting to ride without a ticket on a later train, from which he was expelled.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This is an action sounding in tort, brought by the plaintiff in error against the Pennsylvania Company, the defendant in error, claiming damages for unlawfully ejecting him from its passenger train on its road between Alliance and Crestline, Ohio, on March 6, 1899. The case was tried before the court and a jury, when testimony was adduced tending to show the following facts: The plaintiff, who was a lawyer practicing at Marion, Ohio, made a trip on business to New York, going by another route than that of the defendant's. Having completed his business there, and wishing to stop over at Alliance on his return, to attend to some further business there, he applied to the ticket agent of the defendant at New York, and inquired whether he could purchase a ticket of him from New York to Marion, Ohio, with the privilege of stopping over at Alliance, to which the agent replied in the affirmative. Thereupon the plaintiff purchased a through ticket, which was in the common form for the whole trip; the agent assuring him that he would have the right to stop over at Alliance. The ticket bore coupons providing for transportation—First, from New York to Pittsburg; second, from Pittsburg to Crestline; and, third, from Crestline by a distinct ticket over another road, called the "Big 4," to Marion. Soon after leaving New York, when the conductor took up the first coupon, the plaintiff explained to him that he had purchased the ticket with a privilege of a stop-off at Alliance, and the conductor wrote upon the ticket, which he withheld for the night, the words "Off Alliance." After leaving Pittsburg the next morning, and before reaching Alliance, the plaintiff called for his ticket. An-

other conductor was on this train. On being told by the plaintiff that he wished to stop off at Alliance, and that he made an agreement when he bought the ticket giving him this privilege, this conductor declared that he had no such right, and refused to allow him the privilege. Against the protest of the plaintiff, he tore off and retained the coupon running from Pittsburg to Crestline, handing back the ticket from Crestline to Marion. The plaintiff informed the conductor that he had business requiring him to stop off at Alliance, and should do so. The plaintiff left the train at Alliance, and, having dispatched his business, he then took the next train of the defendant going to Crestline. When the conductor of that train called on the plaintiff for his ticket, he explained all the circumstances above narrated, and claimed the right to ride through to Crestline. The conductor did not assent to this, and demanded his fare. The plaintiff refusing to pay it, the conductor telegraphed to the proper officer of his company for instructions, as follows:

"Massillon, 3/6/1899.

"F. Clemens: Two pass'rs boarded train at Alliance holding tickets of P. R. R., issued form D25, Nos. 8,670 & 8,671, our coupons lifted. They claim that they bought the ticket with the understanding that they could stop off at Alliance, and on arrival of No. 9 at Alliance got off. Their tickets read Crestline to Marion, limited to March 7. Please advise.

"Altaffer."

To this he received the following reply:

"3/6/1899.

"Altaffer: Parties were informed that they could not stop over. Collect fare. "F. Clemens,
"H."

Thereupon, the plaintiff still refusing to pay his fare, the conductor, in the presence of a considerable number of passengers, putting his hand upon his shoulder, indicated that he would compel him to leave the train. No violence was used, but the plaintiff left because he knew there was no alternative. Later the plaintiff returned to Marion by another route. There was a time limit on the plaintiff's ticket, within which it must be used and the trip completed. But there was ample time within it for the stop-off at Alliance, and the plaintiff would have reached his destination in time if he had not been put off the train as above stated. By the rules of the company, upon a question arising of the character of that between the plaintiff and the conductor who ejected him, the conductor was required before resorting to such a measure to report the matter to "headquarters" and receive instructions, and he could not put the passenger off without instructions. Clemens, the station agent at Crestline, was appointed by the company to exercise the duty of receiving these reports, and giving such directions on the part of the road where the plaintiff was ejected.

Upon testimony tending to prove these facts, the court, at the request of the defendant, instructed the jury to find for that party. This was done. The case comes here on writ of error from the judgment entered upon the verdict.

Elisha B. Durfee and J. K. Hamilton, for plaintiff in error.

E. W. Tolerton, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having stated the case as above, delivered the opinion of the court.

From the narrative contained in the bill of exceptions of the proceedings at the trial, it appears that the learned judge who presided directed a verdict for the defendant upon the ground that, conceding the plaintiff had a valid contract with the defendant for his transportation from New York to Marion, with the right to stop off at Alliance, still, the conductor on the train running from Pittsburg

to Crestline having taken from him his coupon covering the distance between those places, he was left without any evidence of his right to travel on another train from Alliance to Crestline, and could not complain that the conductor of the next train put him ·off upon his refusal to pay fare, because, to quote from the charge given to ·the jury, "the law is that, as between conductor and passenger, the evidence of the contract, which is the ticket, is conclusive, and that the conductor must follow out his conduct on that evidence and on that ticket." In this we think the court erred. It was held by the supreme court in Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71, that a passenger's ticket is not necessarily the only evidence of his right, and that it is competent to show a parol agreement made with the company's agent at the time the passenger buys his ticket ·that he should have a privilege such as that of stopping off at some place along the line, and then seasonably resuming his journey. That case is a sufficient authority. But see many cases affirming the same doctrine collected in 5 Am. & Eng. Enc. Law (2d Ed.) 603–639,—especially Railroad Co. v. Pauson, 17 C. C. A. 287, 70 Fed. 585, 30 L. R. A. 730, and Hufford v. Railroad Co., 64 Mich. 631, 31 N. W. 544, 8 Am. St. Rep. 859, cited with approval in the Winter Case. The evidence in the present case tended to show that the plaintiff's contract for transportation contained such a privilege. If that was so, it became the duty of the company to carry him to Alliance, and there afford him an opportunity to stop off, and then by some later train carry him on to Crestline. But it is said the railroad company violated its contract at the time when the intermediate conductor denied the plaintiff's right to stop off at Alliance and took away his coupon to Crestline, and that his right of action was thereby consummated. It is ,true that it was a violation of the contract, but it did not necessarily put an end to the· plaintiff's right under it. The company could not absolve itself from the obligations of its contract by wrongfully seizing and withholding the evidence of it. There are authorities which hold that a passenger may not enter a train for carriage without a ticket purporting to give him the right to be carried, and refuse to pay fare, relying upon some agreement resting in evidence which the conductor cannot consider. This holding rests upon the impracticability of the conductor's deciding such questions, from lack of time to attend to such duty, and the lack of opportunity to hear the other party. The cases referred to, therefore, hold that in such a situation the passenger should pay his fare, and settle the question of his right with the company. Assuming this doctrine to be correct, as thus generally stated, we think it clear that such ruling is not applicable to the case here presented. It is shown that the railroad company, probably contemplating such incidents as this, had provided by its rules that a passenger should not be. expelled from its trains without the case being first reported and passed upon by its ·representative, who would have opportunity to get information and act advisedly. If the company may bind itself by stipulations collateral to its ticket for transportation, and not shown by it, it is in duty bound to pro-

vide the means by which such stipulations may be executed. It seems probable that if the person having authority to direct the conductor had done his duty, and inquired of the agent in New York, he would have learned of the agreement for a stop-over, and would then have given an order which would respect it, instead of one which he would know was a clear infraction of the passenger's right. He had ample time and opportunity to do this. The evidence tended to show that he had already been informed by the conductor who took up the coupon that the passenger had a ticket which gave him a right to be carried through to Crestline. He was exercising the power of the company in giving directions to the conductor, and his act was its act. The company was chargeable with knowledge that plaintiff had paid his fare, and it is no answer for it to shield itself behind its conductor and say:

"This was a questi n between you and him. You should have paid him your fare, and then come to me for a settlement of my breach of contract in failing to carry you as I promised."

That doctrine is bred of an emergency, and exists only where the special cause for it exists. There was evidence from which the jury might not unreasonably have believed that the plaintiff, when he took the train at Alliance, and when he made the facts known to the conductor on that train, supposed that measures would be taken whereby he would be accorded his rights, instead of the wrong being persistently followed up. It is said he was told by the conductor on the train out from Pittsburg that he had not the right to stop off at Alliance, and he was thereby duly apprised of the mistake of the agent at New York. But why was he bound to respect the opinion of that conductor? It was evidently contrary to that of the agent at New York who sold him the ticket, and to that of the first conductor to whom the ticket was shown, and moreover it was contrary to the fact. If there was some rule of the company under the operation of which a stop-off was not allowed upon such a ticket as the plaintiff held, it was controlled by his contract, for he was not bound to take notice of it unless he in fact knew of it, which was not shown; and there was nothing on the face of the ticket inconsistent with this privilege contracted for. Railroad Co. v. Winter's Adm'r, above cited.

It is contended by counsel for the defendant that the instruction of the court was not only justified, but required, by the decision of this court in Poulin v. Railroad Co., 6 U. S. App. 298, 3 C. C. A. 23, 52 Fed. 197, 17 L. R. A. 800. In that case Poulin bought and paid for at Detroit what was supposed to be a ticket to Montreal and return, but was handed two tickets from Detroit to Montreal. He found out the mistake before he left Detroit, but, not being able to find the agent, went on to Montreal without a correction. On his return, after passing Quebec, the conductor refused to recognize the ticket tendered him, which was one running from Detroit to Montreal, and demanded the fare. This was refused, and Poulin was put off the train. This was his cause of action. But in that case there was no representation or agreement on the part of the agent selling the ticket, and there was a simple mistake, of which

the plaintiff had knowledge before he took the train. He had no reason to suppose that the company knew of the mistake, or knew that it was under any obligation to carry him back on his return trip. There was no proof that there was any rule of the company providing for a reference by the conductor to any officer of the company to guide him in such an emergency, or that any such reference was in fact made. Poulin admitted that he knew that his ticket did not call for a passage on his return trip, but he relied simply ·on the fact that he had paid for his return passage, and had been told by a person at the office of the company, who also told.him he had no authority, that he thought it would be all right. On this state of facts, this court sustained the action of the lower court in directing. a verdict for the defendant. The ground of the decision, as stated by Judge Taft, who delivered the opinion of the court, was that:

·"The conduct of the plaintiff in attempting to ride on a ticket which he knew did not purport to give him a right to do so was negligence, as matter of law."

The case was properly distinguished from such a one as this in the course of the opinion, where it was said:

"This is not a case, it will be observed, where the terms of the ticket, in order to be understood, had to be read in the light of rules of the company not known to the passenger. Here was no representation by the ticket agent selling the ticket as to the effect of ambiguous language, or signs on its face on which the passenger might rely, as in the case of Murdock v. Railroad Co., 137 Mass. 293, 50 Am. Rep. 307. The language of the ticket was plain, and there was no attempt to vary its meaning by any verbal statement by the ticket agent selling it. If there had been, a case would be presented which might call for the application of different principles. Under such circumstances, the passenger would probably have the right to rely on the representation by the agent that the ticket was all right as being, in effect, a statement that the rules of the company permitted conductors to receive a ticket good on its face for passage from one point to another as good for passage either way between the points. But here the agent's act in selling the ticket was, as the plaintiff himself admits, a palpable mistake, upon which the plaintiff, when he discovered it, had no right to rely as a deliberate representation that the ticket was good for passage from Quebec to Detroit."

It will be observed that the decision was put upon the ground of contributory negligence on the part of the plaintiff. In view of the altered and additional facts of the present case, we think it cannot be said, as matter of law, that the plaintiff was guilty of negligence in attempting to ride on the train from which he was ejected. The testimony might induce the jury to come to a different conclusion. But however this might be, such negligence as is imputed to the plaintiff in this particular was not proximate to the injury. After he was aboard of the train, and while he was taking the benefit of his contract, he was put off by order of the company. The question was not one between himself and the conductor, but was one between the passenger and the company itself. It is true that it was said in the Poulin Case:

"The law settled by the great weight of authority, and but recently declared in a case in this court (Railway Co. v. Bennett, 6 U. S. App. 95, 1 C. C. A. 392, 49 Fed. 598), is that the face of the ticket is conclusive evidence

to the conductor of the terms of the contract of carriage between the passenger and the company."

But this language is to be interpreted by reference to the facts in the case, not only by the general rule of construction of judicial opinions, but upon the express distinction made by the court in the passage above quoted from its opinion. Of the Bennett Case it should be said that it was decided before the Winter Case was decided by the supreme court, and is to some extent controlled by the later decision.

The judgment must be reversed, and a new trial awarded.