## MAINS *vs.* HAIGHT

Upon a guaranty that a judgment assigned by the guarantor is collectible from the defendant therein, it is a condition precedent to the liability of the guarantor, that the person to whom the guaranty is given shall proceed in the collection by due course of law; and if he does not, the guarantor is discharged from his liability.

An attempt must be made to collect, and reasonable diligence used, as a condition precedent to the right of action against the guarantor.

A delay in issuing an execution, for upwards of a year and a half after one installment of the judgment has become due, and for more than six months after another installment is due, is such laches as will discharge the guarantor.

Where the non-performance of a condition precedent to a right of action is occasioned by the defendant in the suit, the plaintiff may recover, notwithstanding such non-performance.

Where an agent, or *quasi* trustee, of real estate, whose duty it is to sell for cash, departs from the strict line of his duty, and receives the consideration partly in cash, and partly in other lands, and the principal elects to take the cash value of the land received by the agent, the consideration expressed in the deed given by the agent is not conclusive upon him as to the value of the lands received in exchange. It is merely prima facie evidence of the value of the land, as agreed upon by the parties, and is open to explanation by parol proof.

The rule of evidence in regard to the value of land in a wild, unsettled country, is different from what it is in respect to the value of land in a country settled and improved, and where lands are bought and sold, and occupied, in the vicinity. In the latter case the value is to be determined by the price of similar lands in the same vicinity; while in the former, if the lands are to any considerable extent bought and sold at the place where the value is to be determined, so as to have a market value there, evidence of such market value is competent. But how far it shall govern, must depend upon the other evidence in the case.

THE defendant assigned a judgment to the plaintiff, which he, the defendant, recovered against John C. Nash, on the 15th of February, 1838, for $3819 debt, and $24,87 costs. The judgment was entered by confession, upon bond and warrant of attorney, by the terms of which the judgment was to be paid or collected $500 in one year, $500 in two years, and the residue in three years thereafter. The assignment was dated the 28th of February, 1838, and the defendant guarantied the collection of the same, in the assignment. The plaintiff left the judgment

Mains *v.* Haight.

with the defendant, who was an attorney at law, for collection. At the time of the assignment the defendant held as collateral security, for the payment of the judgment, a house and lot in the city of Rochester, which went with the judgment to the plaintiff. The defendant sold the house and lot and received of the purchaser $1000 in money, $200 of which was laid out in repairs upon the house, and 800 acres of wild land in Illinois and Wisconsin. The consideration expressed in the deed was $5000. On the 18th of June, 1839, Isaac R. Elwood, the law partner of the defendant and the attorney of record in the judgment, issued an execution to the sheriff of Monroe county for the collection of the first installment due upon the judgment. He also issued an execution to the sheriff of Erie county, July 20, 1839, to collect the same amount. Both these executions were subsequently returned *nulla bona.* In August, 1840, the plaintiff took the judgment out of the defendant's hands, and employed another attorney to collect it. The new attorney issued an execution to the sheriff of Monroe county, September 3d, 1841, for the collection of the whole judgment. On the 20th of June, 1844, he issued another execution to the sheriff of Genesee county. This execution was returned collected $866,23, and *nulla bona* as to the residue. That sum was all that was ever collected by execution. The action was brought upon the guaranty, and to recover the money received by the defendant upon the collateral securities in his hands. The cause was referred, and upon the trial the referee received evidence as to the actual consideration paid to the defendant on the sale of the house and lot, subject to the plaintiff's objection that the defendant was bound by the consideration expressed in the deed. The referee, in deciding the cause, excluded the evidence given as to the value of the wild lands, on the ground that the witnesses were not sufficiently acquainted with them to judge of their value, and charged the defendant with the consideration mentioned in the deed, $5000.

The questions raised, which were deemed material, fully appear in the opinion. The referee, the late Judge Maynard, died before the case was fully settled.

*Geo. H. Mumford,* for the plaintiff.

*S. Mathews,* for the defendant.

*By the Court,* JOHNSON, J.　The guaranty upon which the plaintiff has counted in the first two counts of his declaration is, that the judgment assigned is collectible from the defendant in the judgment so assigned.　Upon such a guaranty it is a condition precedent to the liability of the guarantor, that the person to whom the guaranty is given shall proceed in the collection by due course of law ; and if he does not, the guarantor is discharged from his liability.　And so are all the cases.　An attempt must be made to collect, and reasonable diligence used, as a condition precedent to the right of action against the guarantor.

What constitutes proper diligence, where a bona fide effort has been made to collect, seems to depend upon the facts and circumstances of each particular case.　In *Moakley* v. *Riggs,* (19 *John.* 69,) it was held that a neglect to sue the maker for seventeen months after the note fell due, when the maker had obtained his discharge under the insolvent act, was unreasonable, and discharged the guarantor from his undertaking.　In *Kies* v. *Tifft,* (1 *Cowen,* 98,) it was held that a delay from the 1st of February to the 8th of August thereafter to prosecute, was not due diligence ; and the court said that the party prosecuting should not have suffered a term to pass.　But in *Thomas* v. *Woods,* (4 *Cowen,* 173,) it was held that suffering a term to elapse without prosecuting was not an unreasonable delay, under the circumstances of that case.　And Mr. Justice Woodworth, in delivering the opinion of the court, remarks : " Every question of due diligence must be decided by a view of all the facts and circumstances.　What might be a lach in one case might be reasonable diligence in another.　It will not be contended that due diligence requires the prosecution to be commenced in every case on the day the money is payable."

The defendant in this case insists that he has been discharged by the laches of the plaintiff, in not having his execution issued within a reasonable time after it was due by the stipulation,

Mains *v.* Haight.

which was part of the guaranty. The first execution was due February 15th, 1839, and was not issued and delivered to the sheriff until the 18th of June thereafter. This was delivered to the sheriff of Monroe, where the defendant in the judgment resided. Another execution was issued in July following, to the sheriff of Genesee county. Both these executions were for the collection of the first installment of $500 due upon the judgment. These two executions were issued by Isaac R. Elwood as attorney. The second installment of $500 fell due February 15th, 1840, and the third February 15th, 1841. No other execution was issued upon the judgment until September, 1841. Under ordinary circumstance, I am inclined to the opinion that this would be such laches as to prevent a recovery upon the guaranty. But the plaintiff, in answer to this position of the defendant, contends that if the executions were not issued in due time it was the fault of the defendant, and that he cannot be permitted to avail himself of the non-performance of a condition precedent, which is attributable solely to himself, and happened by his neglect of duty.

The referee has found from the evidence before him that the defendant, immediately upon the assignment of the judgment by him to the plaintiff, was appointed the attorney and agent of the plaintiff to collect the judgment so assigned, and that he continued such attorney and agent until August, 1840, when he was discharged and another attorney substituted by the plaintiff. The defendant and Elwood were partners, and it was clearly the duty of the defendant to see to it that the necessary process was issued not only for the purpose of collecting the judgment at as early a day as was reasonably practicable, but also to preserve his client's rights upon the guaranty. I think it may safely be assumed that the referee was justified in this finding of the fact. It was the duty of the defendant to issue the necessary executions as long as he continued the agent and attorney of the plaintiff.

The plaintiff, in order to maintain this action upon the guaranty, must undoubtedly either alledge and prove a performance of the condition precedent or an excuse for its non-performance.

If he can do either, he may recover. (*Taylor & Otis* v. *Bullen*, 6 *Cowen*, 624. *Moakley* v. *Riggs, supra.*) The executions were in fact issued for the collection of the whole judgment; and the attempt made to collect it by the proper process, and the only questions that can arise in considering this branch of the case are, 1st, were they issued in due time? and if not, 2d, has the plaintiff shown a sufficient excuse in law for not issuing them sooner? It seems to me quite clear, under the facts and circumstances of this case, that the plaintiff is chargeable with no laches up to August, 1840. The defendant was his attorney, and it was his duty to proceed diligently in the collection; and I think we are bound to presume that he did proceed with all the diligence that was necessary and proper up to the time of his being discharged. It is not shown that he was in any way delayed or overruled by the plaintiff. On the contrary, there is some evidence to show that he was urged by the latter to proceed and collect the judgment. The least the defendant can reasonably ask us to presume under the proof here is, that he discharged his duty to his client, and proceeded with reasonable diligence.

The defendant contends that the presumption is that he, as the agent and attorney of the plaintiff, proceeded under his instructions, and according to his directions. However this may be in ordinary cases between the attorney and client —a question upon which I do not intend to pass—it would not apply in a case like this, where the delay is set up to defeat an action upon the express guaranty of the attorney that the demand in his hands for collection is collectible. In such a case, I think the attorney is called upon to show affirmatively that the delay, if it is unreasonable, was occasioned not by his own negligence, but by the direction of his client. It would be unreasonable to assume that the plaintiff directed a delay that would operate to defeat the guaranty of his attorney. If he had given any such direction, it was the duty of the defendant, as the attorney of the plaintiff, to instruct him as to the consequences of a delay, upon his guaranty. I shall assume, therefore, that every thing was done by the plaintiff which was necessary and proper to do to collect the judgment and keep alive

Mains *v.* Haight.

the guaranty; and that due diligence under the particular circumstances of the case, as known to the plaintiff and defendant, had been used up to August, 1840, when the plaintiff employed another attorney to collect the judgment. At this time, executions had only been issued to collect the first installment. The second installment had then been due about six months.

But if there had been laches, under the circumstances of this case, I think it would be imputed to the defendant, as it was his duty to proceed with due diligence. It would be a good excuse for the non-performance, on the part of the plaintiff, of the condition precedent, that the defendant undertook to perform it and failed to do so. It is clear, upon principle, that where the non-performance of a condition precedent to a right of action is occasioned by the defendant in the action, the plaintiff may recover, notwithstanding such non-performance. (*Mayor of N. Y.* v. *Butler*, 1 *Barb. S. C. Rep.* 325. *Smith* v. *Gugerty*, 4 *Id.* 614. *Taylor & Otis* v. *Bullen, Moakley* v. *Riggs, supra.*) This does not proceed upon the principle of estoppel, but upon the excusing the non-performance of a condition precedent. It has been said that nothing but the act of the party sued can excuse the non-performance, so as to give the other party the right to maintain his action, without proving performance on his part. But however this may be, the delay of the plaintiff, after he had employed a new attorney to proceed and issue his execution to collect the second and third installments, is in no way excused. It does not follow that because the defendant as the plaintiff's attorney had delayed the issuing of the execution for the collection of the second installment for six months, the plaintiff might delay a year longer with impunity. No execution was issued by the plaintiff, after he had appointed a new attorney to take charge of the collection, until September, 1841. The second installment had then been due over a year and a half, and the third and last, over six months. For this delay, on the part of the plaintiff, there is no valid excuse in law rendered. It follows that the defendant would only be liable on his guaranty for the first installment due upon the judgment, in

any event.   And that liability has, I think, been satisfied by the amount collected upon the execution, $866,23.   It is clear, I apprehend, that this amount is to extinguish the defendant's liability upon the guaranty as far as it goes; and if he is not liable beyond the amount collected, he is wholly discharged from it.

The defendant, however, independent of the guaranty, is liable upon the common counts for all moneys received by him which belonged to the plaintiff, upon the judgment, until the whole judgment is satisfied.

The referee charged the defendant with $5000, as the sum received by him on the sale of the house and lot in North-street in the city of Rochester.   That was the consideration expressed in the deed.   The evidence, which was received by the referee subject to objection, showed that the actual consideration paid by the purchaser to the defendant, was $1000 in cash, and 800 acres of wild land in Illinois and Wisconsin.   Burke, the purchaser of the house, testified that this land was purchased by him in 1836, at government prices, and that he did not know that it was worth any more when he conveyed it to the defendant, which was some two years after his purchase.   He also testified that there was at that time no sale for western lands, at Rochester.   Cook, another witness, testified that he had some knowledge of the location of these lands, from information, and was at that time engaged in selling western lands, and these lands could not have been sold for over ten shillings per acre, in cash.   This witness had never been in Illinois or Wisconsin, and had no particular knowledge of these lands.

The referee waives the question of the admissibility of this evidence, and assumes that these witnesses had not sufficient knowledge of the subject matter to qualify them to speak of the value of the land.

That the evidence in this case, as to the actual consideration, was competent, there can I think be no doubt.   There are a few cases in which the consideration mentioned in the deed is not open to explanation or contradiction, but this is not one of the

cases excepted from the general rule. . (*Greenvault* v. *Davis*, 4 *Hill,* 643.)

The defendant held this house and lot in the character of an agent or *quasi* trustee, and it was his duty to sell for cash. If he departed from the strict line of his duty, and sold for something else, the principal was not bound to ratify the sale. But if he did, and consented to let the purchaser hold the property, what would be his remedy against his agent or quasi trustee? He might, undoubtedly, elect either to take what the agent received in kind, or what it was worth in cash, or perhaps the value of the thing sold. The plaintiff, as I understand in this case from the course of the evidence upon the trial, elected to take the cash value of what the defendant received. But he insists that the agreement between the defendant and Burke is conclusive as to the value of the western lands, as against the defendant. The referee did not so hold, and I apprehend the position cannot be sustained. Supposing they had inserted in the deed fifteen hundred dollars as the consideration. Clearly the plaintiff would not have been concluded by it. He could still resort to his proof to fix the value. . The most that can be claimed from the deed is, that it is prima facie evidence of the value of the land as agreed upon by the parties, and is at least an admission of the defendant as to its value. This is substantially what the referee held. But I think he erred in assuming that the witnesses who testified knew nothing of the value of the land in question, and that their testimony was entitled to no consideration. No such want of knowledge appears in regard to Burke. For aught that appears, he saw the land before he purchased it, and knew what it was then worth, and all the advantages and disadvantages of its location. He was not examined upon the subject of his knowledge of the land, and I think the presumption is that the owner, who has purchased property and retained it for two years, and then sells it, knows something of its quality, situation and value, unless the contrary appears. And it is obvious from the very necessity of the case that the rule of evidence in regard to the value of land in a wild, unsettled country, and the place where the value is to be deter-

mined, must be different from what it is in regard to the value of land in a country settled and improved, and where lands are bought and sold, and occupied and cultivated in the vicinity. In the latter case, the value would be determined by the price of similar lands in the same vicinity; while in the former, there being no settlements or sales in the vicinity, there could be no standard by which to determine the value at all, unless resort could be had to places more remote, where wild lands are bought and sold in market. If wild lands at the west are to any considerable extent bought and sold in the city of Rochester, so as to have a market value there, I have no doubt that such market value is competent evidence. How far it should govern, would of course depend upon the other evidence in the case. It might appear that there was a better market elsewhere, or that the particular lands had some peculiar value from their location, or the like.

The referee evidently regarded this evidence as of no value whatever, and entitled to no consideration. In this I think he erred. The question before him, or one important question, was, what was the cash value of this land? The standard value as fixed by law to the first purchasers was $1,25 per acre. This was certainly something by way of evidence as to value, where so large a domain is uniformly sold at that price. It did not appear that any thing had occurred to enhance the value of this particular land, and it is evident that the witness, Burke, did not regard it as having any greater value at the time. And besides, the referee had no right to assume, without any proof, that the former owner had no knowledge of the value of his property. Had he regarded the witnesses as qualified to testify on the subject of the value of the land, the result might have been different. For this error, I am of opinion the report should be set aside and a new trial ordered. There are several other questions in the case which it is not important to notice, as the case, upon its merits before the referee, turned substantially upon the question as to how much the defendant was to be charged with by reason of that sale.

And I am the more inclined to order a new trial in this action,

as the case itself was never fully settled by the referee, and there is considerable conflict as to the facts actually proved before him.

New trial granted.

[MONROE GENERAL TERM, September 6, 1852. *Selden,* *T. R. Strong* and *Johnson,* Justices.