## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* STREET.

[No. 3,390.   Filed February 12, 1901.]

CARRIERS.—*Passenger Associations.—Interchangeable Mileage Tickets.—Ejection of Passengers.—Principal and Agent.—Railroads.—* A passenger association of which defendant railroad company was a member, in issuing an interchangeable mileage ticket, was the agent of defendant, and defendant cannot escape liability for the ejection of a passenger from its train because the ticket tendered by the passenger in payment of his fare was issued by such passenger association. *pp. 225-227.*

SAME.—*Passenger Associations.—Interchangeable Mileage Tickets.— Failure of Railroad Company to Furnish Exchange Tickets.—*Where plaintiff presented an interchangeable mileage ticket to defendant railroad company's agent, purchased of a passenger association of which defendant was a member, and requested an exchange ticket, and was informed by the agent that the supply of exchange tickets was exhausted, and that defendant's conductor had authority to give him transportation on his mileage without exchange, plaintiff had the right to enter defendant's train, and was a passenger, and not a trespasser. *pp. 228-237.*

SAME.—*Interchangeable Mileage Tickets.—Failure of Railroad Company to Furnish Exchange Tickets.—*Where plaintiff presented an interchangeable mileage ticket to defendant railroad company's ticket agent, purchased of a passenger association of which defend-

ant was a member, and demanded an exchange ticket, and was informed by the agent that the supply of tickets was exhausted, he was not required to pay the regular fare and then sue the company for failure to carry him on his mileage book, but had the right to be carried on his mileage, and, if ejected, bring suit for damages. *pp. 231-235.*

From the Henry Circuit Court.   *Affirmed.*

*John L. Rupe,* for appellant.

*W. A. Brown, M. E. Forkner* and *G. D. Forkner,* for appellee.

WILEY, J.—Appellee sued appellant to recover damages for an alleged wrongful ejectment from one of its trains. The facts upon which appellee bases his cause of action are stated in two voluminous paragraphs of his complaint. To each paragraph of complaint a demurrer was addressed and overruled.   Appellant's answer was in four paragraphs. Reply in denial.   Jury trial; verdict and judgment for appellee.   Motion for a new trial overruled.   Overruling the demurrer to each paragraph of complaint and the motion for a new trial are assigned as errors.

Appellee had purchased and had in his possession a ticket known and called the "Central Passengers' Association Interchangeable 1,000 mile Rebate Exchange Ticket."   It is charged that though the contract was made in the name of the Central Passenger Association by F. C. Donald, commissioner, it was in fact made by appellant in that name and by the association in behalf of and with authority of the appellant.   The contract limiting the use of the ticket is set out in full in the complaint.   Appellee presented the ticket at a regular ticket office of appellant, at a proper time, and demanded an exchange ticket, which his contract provided should be procured, and was informed by the agent that the supply of such exchange tickets had been exhausted and that he could not furnish him with one.   It is further averred that appellant's ticket agent, at Hamilton, Ohio, where appellee had presented his said interchangeable

ticket, informed him that appellant had a regulation by which, under the circumstances which then existed, the conductor had authority to give him transportation on his mileage ticket, without an exchange ticket, by tearing out mileage from Moslers, which was the next flag station south of Hamilton, that being the direction appellee desired to go; that such agent tendered appellee the amount of fare from Hamilton to Moslers, which he declined, and said the conductor might tear out mileage from his book to Richmond, Indiana, where he desired to go. It is also averred that such ticket agent told appellee that he could use his interchangeable mileage ticket on the train without an exchange ticket; that appellee believed and relied upon said statement and entered one of appellant's regular passenger trains for passage to Richmond, presented to the conductor his interchangeable ticket, and fully informed him of the facts in regard to his attempt and failure to procure a rebate ticket, and what said agent said to him about using his interchangeable ticket; that the conductor refused to accept such interchangeable ticket, and ejected appellee from the train at a station named. It is also averred and the contract set out shows that the mileage ticket held by appellee should under no circumstances be accepted for passage on a train. The complaint further shows that appellee was accompanied by his wife, for whom he had purchased a ticket; that he did not have with him money to purchase a ticket for himself; that after he had been wrongfully ejected as aforesaid, he was compelled to procure a conveyance to carry him to Eaton to take a late train to Richmond, his destination, at which place he did not arrive till a late hour at night.

The above facts are gleaned from the first paragraph of the complaint. The second paragraph avers the same material facts, except that it omits any allegations as to what the agent at Hamilton said to appellee as to his right, under the existing circumstances, to use on the train his interchangeable mileage ticket.

Our attention has not been called in argument to any

decided case, and we have been unable after careful research to find that the identical question here presented has been adjudicated in any court of last resort. We find, however, some cases where a similar principle of law has been ably discussed, and, as we think, correctly decided.

As to appellee's right to recover under the allegations of the complaint, counsel for appellant suggests and discusses three propositions: (1) Had appellant's ticket agent at Hamilton power, as a matter of law, to bind appellant by his statement to appellee? (2) Had appellee, on the advice of the ticket agent, a right to go upon the train as a passneger, knowing that he did not have an exchange ticket, which his contract required that he should have, and demand that he be carried upon his mileage ticket alone? (3) That if there was a violation of the special contract in appellant's failure to furnish appellee with an exchange ticket, he was confined in his legal remedy for the violation of his rights under the contract, and that he had no right to enter the train as a passenger, and after his ejection, under the facts stated, sue for resulting damages.

It is further suggested in argument that the interchangeable ticket purchased by appellee was issued by the Central Passengers' Association, and that appellant was not a party to the contract. It is shown that the Central Passengers' Association is a combination composed of a great number of railroad companies, and that appellant was one of the number. The complaint shows that the ticket in question was purchased of appellant at its ticket office at Richmond, Indiana. It does not seem to us that it makes any difference because the ticket was issued by the Central Passenger Association, for we are clear that such association, in issuing the ticket, was the agent of appellant, for appellant was a part and parcel of the association, and it would therefore be bound by its acts within the scope of its authority. And this fact is emphasized by the additional fact that appellant itself sold the ticket to appellee.

As to appellant's first proposition, we do not think that what appellant's agent at Hamilton told appellee constitutes an important factor in the case, and yet it may be important to decide the question. Under the terms of the contract, upon which the interchangeable ticket was sold to appellee, although it is not expressly so declared, it was the duty of appellant to keep on hand at all of its regular ticket offices an adequate supply of exchange tickets, to meet the demands of holders of interchangeable tickets when presented, under the rules and regulations governing their issue. A holder of such ticket has the right to presume that any member of the association will keep on hand at its regular ticket offices a sufficient supply of such exchange tickets, and will furnish the same upon proper demand and under prescribed rules. It follows from this that it was the duty of appellant to furnish appellee an exchange ticket from Hamilton, Ohio, to Richmond, Indiana, when he presented to the ticket agent at the former place his interchangeable ticket, showing his right to such exchange ticket, and the fact that the supply had been exhausted was not a valid excuse on appellant's part to violate its contract. Appellee had paid $30 for his interchangeable ticket, as shown by the complaint. Such ticket entitled him to 1,000 miles transportation over the lines of the association, upon compliance with the terms of the contract. He had thus paid three cents a mile for every mile he might thus travel. The fact that he was entitled to a rebate of $10 after using all the mileage, by surrendering the cover, etc., can make no difference. He complied with the terms of the contract when he presented his mileage book and demanded an exchange ticket. He was deprived of his right under the contract by the act of appellant. It is true that the procuring of an exchange ticket was a condition precedent to appellee's right to be carried to his destination, but having attempted to procure such ticket according to the terms of his contract, and it having been refused by appellant through no fault of his, it seems reasonable

and right that he could demand a performance of the appellant's part of the contract as if there had been no condition in it.

In *Ruble* v. *Massey*, 2 Ind. 636, the court say: "The law is settled that where a precedent condition was to have been performed by the plaintiff, but its performance has been prevented by the defendant, such prevention may be averred as an excuse for the non-performance."

In *Hawley* v. *Smith*, 45 Ind. 183, on p. 202, the court says: "The rule is, that when the performance by one party is prevented by the act of the other, the party not in fault should recover in damages such sum as will fully compensate him for the injury which he has sustained by reason of the non-performance of the contract. The law is settled that where a precedent condition was to have been performed by the plaintiff, but its performance has been prevented by the defendant, such prevention may be averred as an excuse for non-performance of such precedent condition."

"It is an elementary rule that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned." Broom's Leg. Max. 195. See, also, the following authorities: *Durland* v. *Pitcairn*, 51 Ind. 426; *Lane* v. *Albright*, 49 Ind. 275; *Jones* v. *Walker*, 52 Ky. 163; *Mains* v. *Haight*, 14 Barb. 76; *Jewell* v. *Blandford*, 37 Ky. 472; *Elkhart, etc., Co.* v. *Ellis*, 113 Ind. 215; *King* v. *King*, 69 Ind. 467.

In this case, as is shown by the complaint, appellee had paid his fare by the purchase of a mileage book and had the evidence of such fact in the ticket itself. He had done all in his power to comply with the rules which appellant had prescribed, and in our judgment he had a right to enter the train, and was properly on the same as a passenger, and not as a trespasser. There are cases in this State and in other states which are in line with the rule we have stated, and, as we believe, in full harmony with it.

In the case of *Cleveland, etc., R. Co.* v. *Beckett,* 11 Ind. App. 547, the appellee applied at a regular ticket office of appellant for a ticket from one station to another on its line of road and tendered to the agent the fare therefor. He failed to get such ticket by reason of the incapacity and negligence of the agent, who advised appellee to get on the train without the ticket. He was going from Indianapolis to Jonesboro and return, and wanted and asked for a round-trip ticket. Appellee got on the train, and when the conductor called for his ticket he explained that he had attempted to purchase one, but could not get it. He tendered to the conductor the regular ticket fare, which was refused, and the conductor demanded of him the excess cash fare, which he refused to pay. He was ejected from the train, and sued for damages. In deciding the case, the court, by Gavin, J., say: "The railroad company has a right to require passengers to procure tickets, or, upon failure to do so, to pay the regular fare, and not the reduced ticket fare, provided proper facilities are given to enable the passengers to purchase such tickets. * * * But the furnishing of such facilities is a prerequisite right to demand such excess over the ticket fare, and where the opportunity is not given the passenger to procure a ticket, and his application therefor is without just cause refused, and he without fault boards the train without such ticket, he will, upon tender of the ticket fare, be entitled to all of the rights and privileges that a ticket would afford him. * * * Although the conductor may be acting strictly according to the rules of the company, and doing that and only that which, under its rules, he is authorized to do, it by no means follows that his conduct is rightful toward the passenger. Between himself and the company its rules will justify the conductor, but not so as between himself as the company's representative and the passenger. * * * The first wrong was by appellant in failing to furnish appellee a ticket upon his reasonable demand therefor, and it must answer for all the

consequences naturally following from that wrong. The company can not be permitted to justify its own wrongful conduct by the fact that its servants were acting according to its directions or rules. *　*　* Under these authorities, we are of opinion that it was the duty of the company either to provide appellee an opportunity to obtain a ticket or to make some provision by which he could pay his fare at the ticket rate upon the train. Neither was done, but he was ejected for his refusal to pay to the conductor the amount demanded, which was in excess of the ticket fare. This demand was wrongful and the passenger's expulsion for refusal to comply with it was also wrongful."

We quote again from *Chicago, etc., R. Co.* v. *Graham,* 3 Ind. App. 28, 50 Am. St. 256: "If, however, a passenger is unable to procure a ticket through the fault of the company, he may take passage on such train, and upon a tender of the ticket fare will be entitled to all of the rights and privileges that a ticket would afford him. Upon a tender of fare under such circumstances, the relation of carrier and passenger would obtain, and the company would have no right to eject such passenger, or deny him passage, because he is without a ticket. This principle is firmly settled by the decisions of the Supreme Court of this State."

The following cases strongly tend to support the rule under consideration: *Lake Erie, etc., R. Co.* v. *Close,* 5 Ind. App. 444; *Jeffersonville R. Co.* v. *Rogers,* 28 Ind. 1; *Indianapolis, etc., R. Co.* v. *Rinard,* 46 Ind. 293; *St. Louis, etc., R. Co.* v. *Myrtle,* 51 Ind. 566; *Lake Erie, etc., R. Co.* v. *Fix,* 88 Ind. 381, 45 Am. Rep. 464; *Pittsburgh, etc., R. Co.* v. *Hennigh,* 39 Ind. 509; *Toledo, etc., R. Co.* v. *McDonough,* 53 Ind. 289; *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 631, 31 N. W. 544; *Railroad Co.* v. *Murden,* 86 Ga. 434, 12 S. E. 630; *Evansville, etc., R. Co.* v. *Cates,* 14 Ind. App. 172; *Missouri R. Co.* v. *Martino,* 2 Tex. Civ. App. 634, 18 S. W. 1066.

Counsel for appellant argues that when appellee failed to

procure an exchange ticket, he should have purchased a regular ticket, or paid regular fare, and then have sued the company for failure to carry him upon his mileage book. In such case the damages recoverable would have been the difference between the regular ticket or cash fare and what it would have cost if he had ridden on his mileage ticket. We do not think this position is tenable. If so, if a passenger makes a proper application for a ticket and tenders the price of it, but is refused by the negligence or fault of the agent, he must then enter the train and pay the excess cash fare, where it is demanded, and sue the company to recover the difference. This would be dealing in trifles, and the law does not do this, nor demand it. This is not the law, as we have seen by the cases above cited. This action is an action for something more than a mere breach of a contract. It is for a violation of a positive duty imposed upon appellant by law and includes every injury that resulted proximately therefrom. As was said in *Chicago, etc., R. Co.* v. *Graham, supra:* "While the right to ride upon the train had its foundation in the implied agreement upon the part of the company to carry the appellee, created by the payment of fare, the action is not for the breach of such contract, but for the violation of a personal right assured by the law. As between carrier and passenger the law imposes a duty upon the carrier independent, in a sense, of their contractual relations, although incidental thereto, but which has its basis in the regard the law has for human life, and personal security."

The case of *Louisville, etc., R. Co.* v. *Hine*, 121 Ala. 234, 25 South. 857, is in point. There appellant had a rule that persons provided with transportation could ride upon freight trains by procuring a permit. Appellee purchased of one of appellant's ticket agents a ticket from one station to another, and at the same time made application for a permit to ride on a freight train. The agent promised appellee to procure the permit and give it to the conductor.

He got the permit, but failed to give it to the conductor. Appellee got on the caboose of the freight train, presented his ticket to the conductor, who refused to accept it, because it was not accompanied with a permit, and ejected him from the train. *Held* that under the facts appellee could recover. It was also held that appellant's rule prohibiting passengers from riding on freight trains without permits, and appellee's knowledge of the rule, were no defense. The court in that case said: "The carrier cannot shield itself from the consequences of misconduct or mistake on the part of one of its agents, acting within the scope of his duties, which has naturally betrayed another of its agents into the *final* act of injury to the passenger," citing: *Murdock* v. *Boston, etc., R. Co.,* 137 Mass. 293; *Lake Erie, etc., R. Co.* v. *Fix,* 88 Ind. 381, 45 Am. Rep. 464; *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 631, 31 N. W. 544; *Head* v. *Georgia, etc., R. Co.,* 79 Ga. 358, 7 S. E. 217; *Louisville, etc., R. Co.* v. *Gaines,* 99 Ky. 411, 36 S. W. 174, 59 Am. St. 465.

A breach of the duty which a common carrier, as such, owes to its passengers, involves misfeasance as well as nonfeasance; and for an injury caused by such breach, an action lies in favor of the passenger in tort, as well as upon the contract of carriage. *Louisville, etc., R. Co.* v. *Hine,* 121 Ala. 234, 25 South. 857; 2 Sedgwick on Dam. (8th ed.) §859; 5 Am. & Eng. Ency. of Law (2nd ed.), 691; *Louisville, etc., R. Co.* v. *Gaines, supra; Sheldon* v. *Uncle Sam,* 18 Cal. 537.

In *Reed* v. *Great Northern R. Co.,* 76 Minn. 163, 78 N. W. 974, appellee had adopted a rule that it would carry passengers on a certain freight train when persons so desiring to be carried had provided themselves with transportation, and procured from a ticket agent a permit so to ride on such train. The company supplied their ticket agents with blank permits, which were to be filled and signed by the agent issuing them. Appellant applied to the agent at a

certain station for such permit. The agent was on the plat-
form at the station, assisting to unload freight, and told ap-
pellant that he could have the permit as soon as he had time
to make it out. The application for the permit was made
fifteen minutes before the train left the station. The agent
failed to furnish the permit, and when the train started he
was standing in the station door. Appellant knew of the
existence of the rule, and had before ridden on the same
train. Without either ticket or permit he boarded the train
and tendered to the conductor the fare to the place where he
desired to go, which tender was refused, and he was ejected
from the train. The trial court directed a verdict for the
appellee. The judgment was reversed, and it was held that
the right to eject a person from a train, under the facts
stated, depends upon the fact that a reasonable opportunity
had been given such person to obtain his permit at the sta-
tion at which he takes the train, and that upon the evidence
it was for the jury to say whether a reasonable opportunity
to obtain the permit had been accorded appellant. The
court used the following language: "If, then, on these
facts, the case is analogous to those in which the rule rela-
tive to the rights of persons who propose to become passen-
gers upon trains on which tickets are absolutely necessary
in order to ride, or where an extra amount must be paid in
case persons board without tickets, the ejectment of plaintiff
was illegal, and he may recover damages. In such cases
the universal rule is that tickets must be furnished at the
station, and if, by the fault of the railway company, there
is a failure to furnish, and passengers enter without tickets,
but offer to pay their fares, they must be allowed to ride.
The trainmen cannot eject them lawfully. The right to
compel persons to leave trains under such circumstances de-
pends on the fact that a reasonable opportunity has thereto-
fore been given to obtain tickets at the usual rates. We are
unable to see why this rule is not applicable to a case of this
nature, and defendant's counsel do not contend that it is

not. Such rule must be applied, if, taken together, we are to treat the permit and the transportation as a freight train ticket; and that is what they amount to. As having a bearing, see *Indianapolis, etc., R. Co.* v. *Kennedy,* 77 Ind. 507. We conclude, on this point, that the defendant's right to eject plaintiff from the train in question depended upon the fact that he had been given a reasonable opportunity to comply with defendant's rule and obtain the permit; and, as to this, the evidence made a case for the jury."

In the former part of this opinion we said that, in our judgment, what the agent at Hamilton told appellee in regard to a rule the company had made, that·under such circumstance he could ride on the train by permitting the conductor to tear out of his mileage book coupons from Moslers, did not constitute an important factor in the case; but as opposing counsel have earnestly argued the question, it is proper to decide it. It is certainly in the line of duty and scope of authority of a ticket agent of a railroad company to sell tickets and give purchasers thereof all needed information relative to their rights as passengers guaranteed by the contract between the passenger and the railroad company. In deciding the point under consideration, we are not dealing with the evidence, but with a pleading. Appellant's agent told appellee that he could ride on the train under a rule adopted by the company, by allowing the conductor to tear out coupons from his mileage book from a certain flag-station. We can not see any good reason why appellee had not a right to rely upon that information, and counsel for appellant has not suggested any well grounded reason to the contrary. Our attention has been called in appellee's brief to a case which we think in principle and reason settles this question. *Murdock* v. *Boston, etc., R. Co.,* 137 Mass. 293, 50 Am. Rep. 307. In that case, the ticket agent sold to the plaintiff a punched ticket, and made certain representations to him as to its validity. Under the rules of the company he had no authority to sell such a

ticket, or to make the statements he did concerning it. The plaintiff relied upon the statements, went upon one of the company's trains, presented the ticket to the conductor, who refused to accept it, and he was expelled. In deciding the case the court said: "If the defendant's superintendent or president or both of them had been standing by when the plaintiff purchased his ticket, and had heard and assented to what was said by the ticket seller, and if they also were under the same mistake as to rules established for the guidance of conductors, the legal position of the plaintiff would hardly have been stronger than it is at present. It would still be the case that he took his tickets relying on the mistaken assurances of the defendant's agent in respect to their validity. If the defendant through any imperfection in its rules or methods, or any ignorance or violation of rules or instructions by its agents, has been led into any interference with the rights of the plaintiff under such circumstances, it must abide the consequences. To hold the contrary would be a burden upon passengers such as is called for by no reason of necessity or expediency."

In this case, appellant, by its own negligence, in failing to supply its agent with exchange tickets, was unable to carry out its contract with appellee. These facts present a case of emergency. The complaint avers that appellee did not have with him sufficient money to pay his fare to Richmond. There was a rule that at flag-stations (and we presume this means at stations where tickets are not kept on sale) conductors are authorized to accept mileage books and tear out a coupon for each mile traveled. Appellant certainly had a right to provide for such an emergency for two reasons: (1) That the holder of the mileage book should be protected from inconvenience and guaranteed all his rights under the contract, and (2) that appellant might not be held to be in default of the conditions laid upon it under the contract. Appellant's counsel urge that the agent had no right to change or waive the provisions of the con-

tract. This is met and answered by saying that no such claim is made. Appellee relies upon the contract as it is written, and simply claims his rights under it, relieved from the conditions which he offered and was willing to perform, but was prevented from performing by the fault and negligence of the defendant. We are clearly of the opinion that each paragraph of the complaint states a cause of action, and that the demurrer was correctly overruled.

Appellant assigned twenty-nine reasons in its motion for a new trial. All of these but the first four question the action of the court in giving and in refusing to give certain instructions, and in admitting and refusing to admit certain evidence. An examination of all the questions thus raised has led us to the conclusion that none of them present any reversible error. We cannot believe that it would be profitable to lengthen this opinion by discussing them.

The first, second, and third reasons for a new trial are that the verdict is not sustained by sufficient evidence, and is contrary to law. It is urged that appellee failed to make a case, because the evidence shows that the contract was between appellee and the Central Passengers' Association, and not between appellee and appellant. We do not think there is any merit in this position. Appellant was a part of the association, and the association was therefore its agent in issuing the mileage book, and making the accompanying contract. The law will not permit a corporation to deal through an agent, and thus erect a barrier to protect it from its own wrong or fault.

The next point discussed arises under the fourth paragraph of answer, which pleads a law of Ohio, where the wrong complained of had its inception. It is argued that, under the law of Ohio, it was the duty of appellee to pay his fare, and sue the company for a breach of its contract. From an examination of the authorities, we are unable to adopt the views of appellant's learned counsel upon this proposition. If appellant's position is a correct one, appel-

lee's only right of action would be for a breach of the contract, and could not sue sounding in tort. This is not the law of Ohio, as we understand the authorities. We think a reference to one case will fully illustrate the fallacy of appellant's position: *Pittsburgh, etc., R. Co.* v. *Reynolds,* 55 Ohio St. 370, 45 N. E. 712. In that case it was held that where appellee purchased a ticket from appellant, entitling him to be carried from a certain station to another on the line of its road, which was good only on trains stopping at his destination, and he was induced by the fault of the company's agent to take a train that did not stop at such station, and was ejected by the conductor upon calling for his ticket before reaching his destination, he could recover as for a tort, and not merely for a breach of the contract.

The evidence fully sustains the verdict.

Appellant's fourth reason for a new trial was that the damages were excessive, but the point is waived by a failure to discuss it.

Judgment affirmed.