## P. S. FERGUSON, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

Springfield Court of Appeals, May 2, 1910.

1. **COMMON CARRIERS: Railroads: Ejection of Passengers: Burden of Proof.** Plaintiff's evidence showed that he purchased a ticket on defendant's road, properly dated, signed and stamped. The ticket also contained the description and signature of plaintiff, and plaintiff was assured by the station agent that it would carry him to his destination and was good for the return trip. On the same day, he presented to the conductor the ticket issued to him by the agent, but the ticket contained only the return coupon and the auditor's stub, and the going coupon was not attached thereto. The conductor refused to carry plaintiff and had him leave the train at the next station. *Held*, that upon this showing, plaintiff was entitled to go to the jury on the question of a wrongful ejectment; that, under the evidence, it was the duty of the conductor to ascertain whether the plaintiff had not purchased the ticket, as he had represented, and that the burden was cast upon defendant to show that plaintiff was properly ejected from the train, and that the trial court erred in sustaining the demurrer of defendant to the evidence.

2. ———: ———: ———: ———. Section 1074, Revised Statutes 1899, by necessary implication prohibits the ejection of a passenger except under the conditions specified in the statute. The burden is on the company and not on the passenger in such cases to show that the person ejected from the train was put off for failure to pay the fare or for some other statutory ground.

3. ———: ———: ———: Damages: Violence Not Necessary for Recovery. To constitute an ejection from a train by a conductor so as to render the railroad company liable therefor, it is not necessary that any violence should be used. If the conductor, under his authority to determine whether or not a person claiming to be a passenger shall be transported, noti-

fies such person that he must leave the train, the person so notified may, without further resistance, depart therefrom and maintain an action for damages if the ejectment was without right.

4. ———: ———: ———: ———: **Second Payment of Fare Not Required.** Where a passenger is rightfully on the train, there is no duty on his part to pay his fare the second time in order to avoid ejection. He is not required to thus minimize the carrier's damages.

5. ———: **Enforcement of Rule Requiring Ticket.** The argument that it is a hardship upon the carrier not to allow it to require a rigid enforcement of its rule that a passenger must present to a conductor a valid ticket or subject himself to ejection has, under the modern rules of carriers of passengers, lost much of its cogency.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright,* Judge.

REVERSED AND REMANDED.

*H. L. Shannon* for appellant.

(1) Where, under the regulations of the railroad company, the passenger is placed in a situation needing explanation as between himself and the conductor, it is the duty of the passenger to give the needed explanation and if he does so truthfully it will be at the risk of the carrier if the explanation is not accepted. Cleveland Ry. Co. v. Kinsley, 27 Ind. App. 135, 87 Am. St. Rep. 245; Alabama, etc., Co. v. Drummond, 73 Miss. 813; Alabama, etc., Co. v. Holmes, 75 Miss. 371; O'Rouke v. Railroad, 103 Tenn. 124, 76 Am. St. Rep. 639. (2) Where ticket indicates probability of mistake by the company, ejection is unwarranted. Krueger v. Railroad, 68 Minn. 445; Trice v. Railroad, 40 W. Va. 271. (3) The decided weight of authority is to the effect that where the passenger exercised ordinary prudence in the purchase of his ticket, the carrier cannot excuse itself from the consequences of its own acts by showing that they were pro-

duced by the concurrent acts of two agents rather than by the sole act of the ejecting conductor. If the latter should fail to heed the explanations and protests of the passenger at that time, he does so at the financial peril of his employer. 5 Am. and Eng. Ency. of Law (2 Ed.), 603; Hufford v. Railroad, 64 Mich. 631, 8 Am. Rep. 859; Frederick v. Railroad, 37 Mich. 342, 26 Am. Rep. 531; Ellsworth v. Railroad (Ia.), 63 N. W. 584; Liard v. Traction Co., 166 Pa. St. 4; Penn. Co. v. Bray, 125 Ind. 229; Lake Erie, etc., v. Fix, 88 Ind. 381, 45 Am. Rep. 464; Railroad v. Rice, 64 Md. 63; Rouser v. Railroad, 97 Mich. 565; Railroad v. Bambrey (Pa.), 16 Atl. 67.

*Robert T. Railey* and *Edward J. White* for respondent.

(1) "If his ejection was lawful, then plaintiff cannot recover in this action, because it is based upon an alleged unlawful removal of the plaintiff from the cars." Logan v. Railroad, 77 Mo. 666; Turner v. McCook, 77 Mo. App. 196. (2) Where a ticket, as in this case, purports to be a contract of carriage, at a reduced rate, and does not, on its face, entitle the holder to transportation between the stations claimed, his removal from the train is rightful unless he pays full cash fare. Woods v. Railroad, 48 Mo. App. 130; Cloud v. Railroad, 14 Mo. App. 145; Boling v. Railroad, 189 Mo. App. 237; Percy v. Railroad, 58 Mo. App. 80; Crutcher v. Railroad, 132 Mo. App. 316; Railroad v. Fitzgerald, 47 Ind. 79; Mosher v. Railroad, 127 U. S. 390; Boylan v. Railroad, 132 U. S. 146; Thorp v. Railroad, 61 Vt. 378, 17 Atl. 791; Bradshaw v. Railroad, 135 Mass. 407, 46 Am. Rep. 481; Railroad v. Goerner, 95 S. W. 1007, 7 L. R. A. (N. S.) 97; Yorton v. Railroad, 54 Wis. 234, 11 N. W. 482; Railroad v. Stockdale (Md.), 34 Atl. 880; Norton v. Railroad, 79 Conn. 109, 63 Atl. 1087; Kiley v. Railroad, 189 Ill. 384, 52 L. R. A. 626; Virginia Railroad v. Hill, 105 Va. 729, 54 S. E. 872; Townsend v. Railroad,

56 N. Y. 295, 15 Am. Rep. 419; St. Louis R. Co. v. Trumbull, 54 Ark. 354; Atchison R. Co. v. Hogue, 50 Kan. 40; Curtis v. Railroad, 94 Ky. 573, 21 L. R. A. 649; Van Dusen v. Railroad, 97 Mich. 239; Cleveland R. Co. v. Cole, 29 O. 126, 23 Am. Rep. 729.

STATEMENT.—On November 3, 1908, appellant purchased a ticket of respondent's station agent at Webb City, Missouri, for transportation from Webb City to Logan, Kansas, and return. Shortly thereafter, on the same day, appellant, with his wife and child, boarded one of the respondent's passenger trains at Webb City, en route to Kansas City, where connection is regularly made with one of respondent's roads to Logan, Kansas.

Appellant presented his ticket to the conductor of said train, who rejected the same, claiming that it was not good for the going trip but that it would be good for the return trip. The conductor carried him on to Carthage, the next station, and at that station tried to get the agent at Webb City by telephone to see if the ticket was genuine and if a mistake had been made, and on failing to get the agent by telephone, told the plaintiff that he could not carry him on that ticket; that he would have to get off. The plaintiff remained in Carthage until the next morning when he purchased a new ticket and continued on his route to his destination.

Thereafter on the 30th day of January, 1909, plaintiff commenced his action in the circuit court of Jasper county, charging the respondent with unlawfully ejecting him from its passenger train, praying for actual damages in the sum of five hundred dollars and for the same amount as exemplary damages. Plaintiff's evidence upon the trial showed that no violence was offered by the conductor.

The ticket was of the kind known as a "Homeseeker's Excursion Ticket," and was sold at a reduced rate. It was made up of two parts, one part constituting the main body of the ticket and containing a statement of

the conditions on which it was sold, and the other part consisting of two coupons, one intended to be used for the going trip and the other intended to be used for the return trip. The ticket contained the following conditions written and printed on its face:

"Good for one first-class passage, to Logan, Kansas, and return, when officially dated, stamped and presented, with coupons attached.

"In consideration of the reduced rate at which this ticket is sold, I, the undersigned, agree to and with the several companies over whose lines this ticket entitles me to be carried as follows, to-wit:

"6th. That any alteration whatever of this ticket renders it void.

"10th. That the coupons belonging to this ticket will not be received for passage if detached.

"11th. That unless all the conditions on this ticket are fully complied with, it shall be void.

"12th. That I will not hold any of the lines named in this ticket liable for damages on account of any statement not in accordance with this contract, made by any employee of said lines.

"13th. And it is especially agreed and understood by me, that no agent or employee of any of the lines named in this ticket has any power to alter, modify, or waive, in any manner, any of the conditions named in this contract.

"I hereby agree to all the conditions of above contract.

(Signed) "P. S. Ferguson,
"Purchaser."

Plaintiff in his testimony stated that he bought the ticket of the agent at Webb City and that it was in the same shape when he handed it to the conductor as it was when he purchased it; that the agent at the time he purchased it told him it was good to Logan, Kansas, and return, and told him what train to get on, and that he

boarded that train.  The going coupon was not attached to the ticket, but instead, an auditor's stub, on which was printed "Auditor's stub.  Not to be sold." The return coupon was properly attached to the ticket, and between the punched holes on this ticket was written, "Logan, Kansas," indicating that the holder was entitled to ride from that place to Webb City, Missouri. The words "Logan, Kansas," at the top of the ticket and across the face of each coupon were written in ink and by the same hand, apparently, that signed the name, "W. H. Sterrett, Selling Agent."  There was no evidence showing that this ticket, as presented to the conductor, was not the usual form of ticket.

With this showing, the plaintiff rested his case.  The defendant asked the court to instruct the jury that under the evidence in the case the verdict should be for the defendant, which instruction was given.  After an involuntary nonsuit and an unsuccessful motion for a new trial, the plaintiff has appealed to this court.

NIXON, P. J.—I.  At the trial of this case, as we have seen from the statement, upon the conclusion of the evidence for the plaintiff, the trial court arrested the further progress of the trial of the case and sustained a demurrer to plaintiff's evidence.

Section 1074, R. S. 1899, provides:

"*Ejection of Passengers, when lawful.*—If any passenger shall refuse to pay his fare, or shall behave in an offensive manner, or be guilty of repeated violations of the rules of the company, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place, or near any dwelling house, as the conductor shall elect, on stopping the train."

It will be seen from the terms of the foregoing statute that a passenger can only be ejected from a train for the reasons therein specified and in the manner

therein prescribed. Our statute is a literal copy of the one in force in the State of Wisconsin, and it has been uniformly held in that State that such a statute by necessary implication prohibits the ejection of a passenger for a refusal to pay his fare except under the conditions specified in the statute. The burden is on the railroad company and not on the passenger in such cases to show that the person ejected from the train was put off for failure to pay the fare or for some other statutory ground. [Holt v. Hannibal & St. L. R. Co., 174 Mo. 524, 74 S. W. 631.]

In the present case the ticket bearing on its face the evidence of its genuineness, under any view of the rights of the passenger, the burden of the evidence at the trial of showing that the ticket was not legal, and that the conductor of the defendant corporation, under its rules and regulations, was not authorized to receive the same, was upon the defendant carrier. We therefore hold in this case that the trial court committed error in sustaining the demurrer to plaintiff's evidence.

II. Another contention made on the part of the respondent is that there was no such expulsion as to render the company liable; that there was in fact no violence used by the conductor towards the passenger.

The evidence is that the conductor told appellant that he would have to get off the train and that he disembarked at Carthage under such direction. To constitute an expulsion from a train by a conductor so as to render the carrier liable therefor, it is not necessary that any violence shall have been used. If the conductor, under his authority to determine whether or not a person claiming to be a passenger shall be transported, notifies such person that he must leave the train, the person so notified may, without further resistance, depart therefrom and maintain an action for damages if the expulsion is made without right. [6 Cyc. 559.] The Supreme Courts of California, New Jersey, New York, Georgia,

Kentucky, Texas and West Virginia have so held. Under these authorities, we hold that the evidence in this case shows at least a technical ejectment of the appellant from the respondent's cars.

III. It is further claimed as a defense in this case that the plaintiff has his action on contract, and that it was his duty at the time his ticket was rejected by the conductor to pay his fare, although wrongfully demanded, in order to minimize respondent's damages.

Under the evidence presented to the trial court, there was no negligence or fault shown to have been committed by the appellant or which could be justly imputed to him. There is no evidence that he boarded the train knowing that his ticket was not the proper evidence entitling him to ride upon the train; and, after having once paid his fare, when it was again wrongfully demanded of him by the conductor, he was not in law required to pay again but was justified in standing on his rights. The carrier, under the circumstances disclosed in this record, cannot be allowed by its representative, the conductor, to say to the passenger that he must submit to extortion in order to prevent an assault upon his person or he will be deemed to have caused his own damage unnecessarily. Such conduct would be an attempt by the carrier to profit by its own wrongful threats. Otherwise stated, such objections of respondent would amount to a claim of exemption from liability for assault because the wrongdoer first offered the choice between assault and extortion. We cannot accept such a view of the law. The States of Georgia, Indiana, Iowa, Minnesota, Washington and Wisconsin by their Supreme Courts and the State of Missouri by its appellate courts have held that where the passenger is rightfully on the train, there is no duty on his part to pay his fare the second time in order to avoid expulsion. [Ellsworth v. Chicago, B. & Q. R. Co. (Iowa), 29 L. R. A. 173; Cherry v. K. C., F. S. & M. R. Co., 52 Mo. App. 499.]

IV. Under the foregoing authorities, it will be seen that the ruling of the trial court in this case in sustaining the demurrer to plaintiff's evidence was material and reversible error. The case being for retrial, however, it becomes necessary to develop the law which should govern the trial court in determining the rights of the parties litigant upon the new trial.

The facts appearing in this record are that the appellant applied to the regular ticket agent of the defendant carrier at Webb City, Missouri, for a ticket to Logan, Kansas, and return, over the defendant's railroad, and was given a special homeseeker's excursion ticket for which he paid the fare demanded of him. The agent at defendant's station prepared this ticket in the presence of the passenger, and it was on one of the printed forms used for tickets by the defendant carrier. It was duly authenticated as provided by its own terms; it was officially dated November 3, 1908; it was duly stamped by the stamp of the defendant corporation, the impression stating, "The Mo. Pac. Ry., Webb City, Mo.," and on the inside of the circle of the stamp was imprinted, "Nov. 3, 1908." Its genuineness was further attested by the autograph signature of the passenger, P. S. Ferguson, and by the autograph signature of E. H. Sterrett, the selling agent, with the date of the sale, November 3, 1908, in his own handwriting and with apparently the same ink as that used in the other writing on the ticket. There is also written across what appear to be the coupons attached to the ticket, "Homeseeker's, Logan, Kan." The ticket recites that it was sold in connection with form T3354, No. 3653, and it was punched as the terms of the ticket required it should be. The coupons attached thereto were also punched. The ticket further contained a printed form designed to give a personal description of the purchaser of the ticket which was punched as follows: "Male, (punched); Size—Stout— (Punched); Hair—Dark—(punched); Height—Medium—(punched)."

Ferguson v. Railroad.

At the time of the purchasing of this ticket, the agent assured plaintiff that it was good to Logan, Kansas, and return, and at the top of the ticket in large letters it was recited that the ticket was good for one first-class passage to Logan, Kansas, and return. The agent at the time of the sale of the ticket told appellant what train to get on and appellant followed his directions.

From this description of what occurred between the agent and the appellant, as well as the circumstances shown by the face of the ticket itself, it is evident that a man of ordinary prudence would have received the ticket as valid and as having been purchased in good faith although the ticket as presented may not have been in the standard form. There is no showing that appellant was guilty of any negligence. In this case, we are not required to consider whether the conductor, when no ticket is presented, is bound to take the mere statement of a passenger that he has regularly paid his fare. The circumstances shown by the evidence in this record and the ticket presented could have led the conductor to but one reasonable conclusion and that was that the appellant had in good faith paid the ticket agent his fare. The ticket itself carried the autograph signature of both the agent and the passenger, with a personal description of the appellant, with the stamp of the company, dated at its office, all tending to show that the appellant had paid his fare to the regular agent of the defendant company; and it would hardly have been more conclusive of the appellant's good faith and of his purchase of the ticket if the conductor personally had stood in the ticket office and heard the appellant actually apply for a ticket and seen the agent prepare one in his presence and the appellant pay his fare therefor. Under these circumstances, to hold that the appellant cannot maintain his action would be placing a burden on passengers that is certainly not called for by any public policy or by reason of any supposed necessity or expediency. We place the lia-

bility of the respondent in this case upon the evidence that the appellant purchased his ticket of respondent's agent in good faith and that the evidence of the genuineness of this ticket which it bore upon its very face, with the explanation that the appellant at the time gave the the conductor as to its purchase and the payment for the same, were sufficient circumstantial evidence to give the conductor of the train probable cause to believe that the ticket in fact had been purchased by appellant of the respondent's ticket agent at Webb City, Missouri. We hold that under this evidence it then became the duty of the conductor to ascertain that such was not the fact before he expelled the appellant from the cars. [Ellsworth v. Chicago, B. & Q. R. Co. (Iowa), 29 L. R. A. 173; Callaway v. Mellett (Ind.), 44 N. E. 198; Southern Ry. Co. v. Wood (Ga.), 39 S. E. 894, 55 L. R. A. 536; Pennsylvania Co. v. Bray (Ind.), 25 N. E. 439; Northern Pac. R. Co. v. Pauson, 70 Fed. 585, 30 L. R. A. 730; Lake Erie & W. Ry. Co. v. Fix (Ind.), 45 Am. Rep. 464; Pittsburgh, C. C. & St. L. Ry. Co. v. Street (Ind.), 59 N. E. 404; Murdock v. Boston and Albany R. Co. (Mass.), 50 Am. Rep. 307; Krueger v. Chicago, St. P., M. & O. Ry. Co. (Minn.), 71 N. W. 683; Hufford v. Grand Rapids & I. R. Co. (Mich.), 31 N. W. 544; Dillon v. Lindell Ry. Co., 64 Mo. App. 418; Gregory v. B. & M. R. Co. (Neb.), 4 N. W. 1025; Yorton v. Milwaukee, L. S. & W. Ry. Co. (Wis.), 21 N. W. 516; Louisville & N. R. Co. v. Gaines (Ky.), 26 S. W. 174; Burnham v. Grand Trunk Ry. Co. (Me.), 18 Am. Rep. 220; Chicago, St. L. & P. R. Co. (Ind.), 20 N. E. 837; Georgia R. & B. Co. v. Dougherty (Ga.), 12 S. W. 747; Texas & P. Ry. Co. v. Dennis (Tex.), 23 S. W. 400; Georgia R. Co. v. Olds, 77 Ga. 673; New York, L. E. & W. R. Co. v. Winter, 143 U. S. 60, 36 L. Ed. 71; Philadelphia, W. & B. R. Co. v. Rice, 64 Md. 63.]

The argument that under the circumstances in this case the passenger should have submitted to temporary inconvenience rather than that the business of the road

should suffer is no longer of much weight. Any supposed hardship requiring a rigid enforcement of the rule that the passenger must present to the conductor a valid ticket or subject himself to expulsion, under modern rules of carriers as to the passenger traffic, has lost much of its cogency. It is now a matter of common knowledge that most carriers in centers of population have rules and regulations requiring that before a passenger may enter upon the ground where the passenger coaches are located he must pass through a gate and have his ticket examined and punched; and at other places, passengers before entering the passenger coaches are required to exhibit their tickets to the trainmen in charge and have them approved. Under the evidence, the appellant was prima facie a passenger, and under the statute, his expulsion was wrongful.

The judgment of the trial court is reversed and the cause remanded. All concur.